CHARLOTTE BARNARD et al. v. JAMES T. KEATHLEY, Appellant.

Division Two, July 19, 1910.

1. **Necessary Parties: Non-Joinder: No Demurrer.**  Where it is apparent from the face of the petition that a certain person is a necessary party, defendant waives the non-joinder by failing to demur, answering over on the merits and failing to plead defect of parties.

2. ———: **Sale by Executor: Conduit of Title.**  In a suit brought by legatees and devisees in a will against the executor to set aside a deed to land made by him, where the facts are that, under the power in the will, he conveyed the land to his son and then the son subsequently conveyed to him, the son, being a mere conduit, is not a necessary party.

3. **PARTITION: Equitable Action: To Set Aside Deed.**  Where the will conferred a power of sale upon the executor, and he sold the land and made his deed to his son, and the son reconveyed to him, and the other devisees bring suit to set those deeds aside, they can couple therewith a count for the partition of the land, since the suit is one in equity, and a court of equity, when it has once acquired jurisdiction of the subject-matter, will proceed to do full justice between the parties.  And though the executor, claiming as a purchaser, has been in the exclusive possession of the land for six years, collecting the rents and enjoying the profits and claiming them and the land as his own, yet the devisees are not required to resort to ejectment, but the deed being set aside, the court may decree partition, if such decree is not contrary to the testator's intention as expressed in his will.

4. ———: **In Contravention of Will.**  There can be no partition of real estate in contravention of the will; but that does not mean that a court of equity does not have power to construe the will, determine the relative interests of the various devisees, and decree those interests, by partition or otherwise, according to the true meaning of the will and the principles of law or equity.

230 Sup—14

5. ——: ——: **Realty Converted into Personalty.** The testator said in his will: "I desire my executor, as soon after my death as can conveniently be done, to sell at public sale, at my residence, all my effects, real, personal and mixed, first all my household, kitchen and other furniture and personal property and as soon after as convenient all my real estate. Said sales to be made and the money arising therefrom collected within or not exceeding one year after my death; the money thereof arising, after setting apart a sufficient sum to pay off all costs of administration, to be distributed to my children," etc. *Held*, *first*, the testator intended by the will to convert the real estate into personal property, and to have the whole sold and the proceeds distributed among his legatees, *second*, he did not vest the title to the realty in the executor, but devised it for the benefit of his children; *third*, under an allegation by the devisees of fraudulent disposition by the executor, whereby he caused the title to be conveyed to himself, by a pretended public sale, a court of equity has authority to set the deeds aside and to cause the land to be sold and the proceeds to be divided according to the will; and, *fourth*, the decree in partition was not in contravention of the will, but was an appropriate means of effectuating the purpose of the testator.

6. ——: **Before Final Settlement.** A partition of lands may be made before final settlement of the estate, where the personal property belonging to the estate is more than sufficient to pay all valid demands and claims against the same.

7. ——: ——: **Costs of Unauthorized Litigation: Contesting Will.** Costs incurred by the executor in a suit brought by him and other devisees to have the will set aside, which could not in any event have increased the properties or the value of the estate, to the payment of which by the estate the other devisees have not consented, will not forestall a partition of the realty.

8. ——: ——: ——: **Defense of Ejectment.** Where the executor was under no obligation to take possession of land devised to a certain devisee, but was in possession thereof in defiance of the will and in his private capacity, costs voluntarily incurred by him as an unsuccessful defendant in ejectment by the vendee of the said devisee, should not be permitted to delay the partition of the estate lands.

9. ——: ——: **Limitations.** Whether the executor's claims against the estate were once valid or invalid, if they are clearly barred by limitations they should not be permitted to defeat a decree for partition of the realty.

10. ————: Suit to Set Aside Deeds: Set-Off: Taxes: Jurisdiction. In a suit by devisees and legatees to set aside a deed to estate lands, made by an executor, under a power in a will, to a son, and a deed made by the son reconveying the lands back to the executor, on the ground of a fraudulent disposition, a court of equity has jurisdiction to set the deeds aside, and to reinvest the title in the devisees, and to decree partition, and to allow just set-offs pleaded by the executor, such as taxes paid by him out of his own funds during the time he had possession of the lands, and to distribute the proceeds among the legatees; and in allowing or determining such set-offs, the court does not trench upon the jurisdiction of the probate court.

11. ————: ————: ————: Rents and Profits. And the court having set aside the deeds and decreed partition, should charge the defendant executor with rents and profits during the time he was in possession under the fraudulent deed.

12. SETTING ASIDE FRAUDULENT DEED: Made by Executor Under Power in Will: To Self. The will desired the executor, as soon after the testator's death as could be conveniently done, to sell his real estate, at public sale, at his residence, and to divide the proceeds among certain named legatees. He spent twenty years in needless litigation, trying first, with plaintiffs, to break the will, and then alone to keep out of possession a special devisee who had been given certain lands. Being thereafter reinstated as executor, he made no further settlement with the probate court, and gave public notice of a sale of the lands for cash, and at the sale they were bid in at $750 for his son by the son-in-law, though they were worth $1500. The executor made an executor's deed to the son, reciting the powers of the will, the public notice, the bid and the payment of $750, but in fact the son paid him only five dollars, and he took from him no notes or memorandum or other evidence of debt, and did not report the sale to the probate court, or charge himself as an executor with the $750. The son resided with his father, put in a crop of wheat, and a few months after the sale conveyed the land to his father, the executor, for $50, but for a recited consideration of $800, and thereafter the executor remained in possession for six years, paying no rents. *Held*, that the chancellor was justified in finding that the sale was made by the executor, through his son as a conduit, to himself, and for the purpose of depriving the legatees of their estate, and the deeds are set aside, and the lands ordered sold.

13. ————: ————: ————: Resort to Probate Court. Nor were the legatees required to proceed in the probate court to compel the executor to make his final settlement and report the $750 purchase money, and bring suit on his bond if necessary. They

had a right to the entire value of the land, and they had a choice of remedies, and it does not lie in his mouth to complain that they did not elect to condone and affirm the fraud, but chose, as they had a clear legal right to do, to have the fraudulent deed set aside, and the property restored to them.

14. ———: ———: ———: **Insolvency: Wrong Basis for Decree.** Although the court found the executor and his son to be insolvent, and there is no evidence of that fact, the decree will not be reversed if it is based, not on their insolvency, but their clearly established fraud.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*James O. Allison* and *David Wallace* for appellant.

(1)  The judgment for partition is contrary to the terms of the will and the intention of the testator as expressed therein.  It is true that in the second paragraph the will uses the word "desire" in referring to the sale of this land by his executors, but in the third clause it says in substance that the sale of this land is "directed" to be made by his executors. Taking the whole will together it means that the real estate named in the petition is directed to be sold by the executors.  It will be noticed that the will nowhere vests the title of the land in the plaintiffs, the heirs or legatees of Roland Keathley.  It is a fair construction that the title was vested in the executors with power of sale.  They took the land coupled with an interest.  Partition cannot be made in contravention of a will and contrary to the testator's intentions expressed therein.  R. S. 1899, sec. 4383; Ex parte Cubbage, 62 Mo. 364; Stevens v. De La Vaulx, 166 Mo. 20; Sikemeier v. Galvin, 124 Mo. 367; Lilly v. Menke, 126 Mo. 211; Stevens v. Lorwill, 110 Mo. App. 151; Mead v. Jennings, 46 Mo. 91.  (2)  The court erred in render-

ing judgment for partition, because the land was in exclusive adverse possession of the defendant. The pleadings and evidence clearly show that the plaintiffs were not in actual or constructive possession. Forder v. Davis, 39 Mo. 108; Shaw v. Gregoire, 41 Mo. 407; Hutson v. Hutson, 139 Mo. 229; Haeussler v. Iron Co., 110 Mo. 188; Colven v. Hauenstein, 110 Mo. 575; Estes v. Nell, 140 Mo. 639; Womack v. Whitmore, 58 Mo. 448; Lambert v. Blumenthal, 26 Mo. 471; Rozier v. Johnson, 35 Mo. 326. (3) Inadequacy of price is not sufficient ground to set aside a sale. Wagner v. Phillips, 51 Mo. 117; Brient v. Jackson, 99 Mo. 585; Gordon v. O'Neil, 96 Mo. 350; Walters v. Hermann, 99 Mo. 529. This is an auction sale. There was a large number of people present able to buy, and a number of bidders, and the land is presumed to have sold for its market value. The price the land really sold for at the well-advertised sale, with a large number of bidders present, should be taken as the best evidence of the market value, and should outweigh the opinions of witnesses given years afterward when the price of land had advanced. (4) The charge of fraud must be supported by satisfactory evidence, and not left to rest upon mere surmise and conjecture. Lowmax v. Railroad, 119 Mo. 192. Fraud must be proved; it cannot stand upon a fog of suspicion, or be based upon mere presumption alone. Kilpatrick v. Wiley, 197 Mo. 123. The burden of proof of fraud in the sale of land is on the party attacking the sale, and the evidence offered to establish the fraud must be clear and convincing. Kaiser v. Gammon, 95 Mo. 217. Fraud is not to be presumed because the purchaser afterward sold to the administrator. Templeton v. Wolf, 19 Mo. 101. The validity of the sale does not depend upon the application of the purchase money. Hodges v. Black, 8 Mo. App. 389. (5) The court erred because it assumed jurisdiction and authority to set aside the sale and partition of the land. There can be no doubt that

the sale was regular and valid up to the time of making the deed. The main ground of complaint urged by respondents is that the purchaser did not pay the purchase money. This did not invalidate the sale. The payment of the purchase money could have been enforced. The executor had a lien upon the land sold for the purchase money. After the land was re-sold to the executor by the purchaser the executor should have reported the money to the probate court and made distribution. He could have been proceeded against in the probate court, and could have been cited to appear and make settlement. He could have been sued on his bond if necessary. A court of equity could have compelled the executor to complete his trust by accounting for the money and making final settlement in accordance with the terms of the will. It was not necessary to resort to partition proceedings and it could not be done without violating the terms of the will. Mead v. Jennings, 46 Mo. 91; Mastin v. Barnard, 33 Ga. 520; William v. Veach, 17 Ohio 171.

*C. T. Hays* and *Ben E. Hulse* for respondents.

(1) The will does not devise the land in controversy to the executor to sell and thereby pass to him the interest in it; but desires that the executor shall sell the land, limiting the time for selling to one year after the death of the testator, and not leaving it to the executor's discretion. The devise constituted, on the testator's death, an immediate conversion of the land into money, and conferred upon the executor a trust power to sell within a time limited—a power not coupled with an interest. State ex rel. v. Walker, 88 Mo. 284; Compton v. McMahan, 19 Mo. App. 494; Llewellyn v. Llewellyn, 122 Mo. App. 467; Morris v. Stephenson, 128 Mo. App. 338. Real estate upon the death of a testator passes to his heirs, subject to the power of disposal conferred upon the executor by the will; and where

Barnard v. Keathley.

the will directs that the lands shall be sold by the executor, he is given nothing but the naked power to sell, and has no interest in the land. Emmons v. Gordon, 140 Mo. 490; Francisco v. Wingfield, 161 Mo. 542; Wisker v. Rische, 167 Mo. 522. (2) Having exercised the power of sale, though fraudulently, the power is exhausted and cannot be again exercised. So that unless the circuit court had jurisdiction herein, respondents must perforce accept the sale. Steel to use v. Farber, 37 Mo. 77; Schanewerk v. Hoberecht, 117 Mo. 22. (3) Appellant contends that respondents should have ratified the sale and have proceeded against the executor through the probate court and compelled the filing of his belated accounting for the elusive, doubtful and inadequate proceeds of the pretended sale. But we contend that if the sale was fraudulent, respondents were not compelled to adopt that course. A court of equity will, in the exercise of its jurisdiction over trusts and trustees, which has obtained ever since the establishment of courts of chancery, examine into the conduct of this trustee in relation to the trust fund in his charge. Such court will not compel these beneficiaries to lose their legacies, or the major portion thereof, under the will, if the donee of the trust power has fraudulently exercised the power, but will declare him to hold the title in trust for the persons equitably entitled to the proceeds; and, having jurisdiction of the *res* and of the persons, will not stop there, but will adjust all equities and make partition, notwithstanding defendant trustee is in possession. Thornton v. Irwin, 43 Mo. 165; Dameron v. Jameson, 71 Mo. 97; Welch v. Anderson, 28 Mo. 299; Reed v. Robertson, 45 Mo. 580; Holloway v. Holloway, 97 Mo. 628; Hamilton v. Armstrong, 120 Mo. 597; James v. Groff, 157 Mo. 402; Roan v. Winn, 93 Mo. 503; Donaldson v. Allen, 213 Mo. 299. (4) It is true that suits in partition brought under the statute, and not equitable in their nature, cannot be maintained when the defendant is in adverse pos-

session of the land involved, and plaintiffs in such cases will be remitted to ejectment. The cases cited on this point by appellant are all cases at law, brought under the statute. That rule, however, does not apply to cases such as this, where the object of the suit is the determination of questions properly cognizable by courts of equity and not susceptible of adequate relief by courts of law. Dameron v. Jameson, 71 Mo. 97. Not having the legal title to the land, plaintiffs could not sue in ejectment for the land or recover at law for rents and profits, and James T. Keathley, being trustee, must account for rents and profits in order that complete justice may be done and a multiplicity of suits avoided. Bent v. Priest, 86 Mo. 482; Landis v. Saxton, 89 Mo. 375; 2 Woerner's Am. Law of Ad. (2 Ed.), sec. 487. (5) It may be conceded that partition cannot be made in contravention of a will. But we submit that that limitation on the right to partition means only that the court cannot disturb the relative claims of the respective parties named in the will to their distributive shares of the devised land or its proceeds. Spratt v. Lawson, 176 Mo. 182; Sikemeier v. Galvin, 124 Mo. 367. (6) Appellant could not do by indirection that which he could not do directly. He is in the same situation as if he had purchased directly from himself. Shaw v. Shaw, 86 Mo. 594; Thornton v. Irwin, 43 Mo. 162. (7) And even if the sale had been in good faith and for a fair price, it would nevertheless have been voidable. Thornton v. Irwin, 43 Mo. 163.

GANTT, P. J.—This is a suit in equity by the residuary legatees of Roland Keathley, deceased, to set aside a certain deed made by James T. Keathley, as the executor of the will of Roland Keathley, deceased, to certain lands described in the petition lying in Ralls county, Missouri, to his son Henry C. B. Keathley, and a certain deed from the said Henry C. B. Keathley,

of the same lands, on the ground that said conveyances were the result of a fraudulent conspiracy between the said James T. Keathley and his said son Henry C. B. Keathley, in fraud of the devisees and legatees of the said Roland Keathley, deceased, and to restore them to the estate of the said Roland Keathley, deceased, and in the second count to have the said land sold and partitioned and the proceeds thereof distributed among the legatees and devisees of the said Roland Keathley, deceased, in accordance with the will of said Roland Keathley.

The defendant in his answer set up as a defense that the sale was properly made in accordance with the will and for an adequate consideration; that the circuit court had no jurisdiction of the subject-matter, because the will conferred upon the executor the sole power to sell and distribute the proceeds and because the incidental relief afforded by partition would be in contravention of the terms of the will. He also alleged in the answer that the plaintiffs had acquiesced in said sale for a period of six years, and that he had been in the exclusive possession of the land since the reconveyance to him, and had paid the taxes for the years 1892 to 1905 inclusive. He also asks credit for various disbursements made by him in the case of Owens v. Sinklear, 110 Mo. 54, and for moneys paid out by him for surveying the John P. Fisher land, and for costs and moneys paid in defending the ejectment suit of John P. Fisher v. James T. Keathley.

The reply pleaded the ten-year Statute of Limitation to these counterclaims and disbursements.

The facts appear to be that Roland Keathley died in 1878 owning about 349 acres of land in Ralls county, Missouri. In 1869, he made his last will, in which he devised a specified one hundred acres to his son John C. Keathley, and a certain other tract of ten acres to his son James T. Keathley. All the residue of his property, real and personal, over and above said two

tracts of one hundred acres and ten acres, he directed his executor to sell at public sale and collect the money arising therefrom, within not exceeding one year after his death, and to make a distribution of the proceeds among his children and grandchildren, after taking into consideration certain advancements therein charged against his children and grandchildren. He appointed the defendant, James T. Keathley, and John C. Keathley and his son-in-law Benjamin Hughes, executors of this last will and testament. James T. Keathley alone qualified as executor under the will. After the making of the will in 1869, Roland Keathley in 1876 conveyed to his son John C. Keathley one hundred and fifty acres of land. In 1878 the will was admitted to probate by the probate court, except as to item six, which item gave to John C. Keathley the specific one hundred acres above mentioned. The court rejected this item on the ground that it had been adeemed by the deed of the one hundred and fifty acres. On the 18th of April, 1878, a suit was instituted in the circuit court of Ralls county to set aside the will, and the defendant James T. Keathley and others were made defendants. Upon the filing of that will contest James T. Keathley was deposed as executor and Abner Barnard was appointed administrator *pendente lite* of Roland Keathley's estate, and continued in that position until August, 1889, when he was succeeded therein by H. M. Bramblett as administrator *pendente lite,* who continued in that position until June 16, 1892, on which last mentioned date James T. Keathley was reinstated as executor of the will of Roland Keathley and from and after that date remained the duly appointed and qualified executor and was such at the commencement of this suit.

In the suit to set aside the will, James T. Keathley and all the other defendants except John C. Keathley pleaded the issue of ademption against John C. Keathley, that is to say, they contended that the devise of

the one hundred acres to John C. Keathley by item six of the will had been adeemed by the testator's subsequent conveyance to him of said one hundred and fifty acres. The will contest was a suit in which the estate of Roland Keathley as such was not concerned, but was a contest between John C. Keathley and the other devisees, including James T. Keathley, against John C. Keathley. The trial court in that case sustained the will, and the other devisees except John C. Keathley appealed to this court, which sustained the will in its entirety (Owens v. Sinklear, 110 Mo. 54, decided in May, 1892), but held that the issue of ademption interjected into the case had no place therein, and reversed the finding of the circuit court on that issue. Afterwards the defendant James T. Keathley being in possession of the said one hundred acres of land, John P. Fisher, who had purchased the same from John C. Keathley on the 7th day of February, 1891, commenced his action in ejectment against James T. Keathley, and in said ejectment suit the latter set up the defense of ademption, basing that defense upon the deed made by Roland Keathley to John C. Keathley of the one hundred and fifty acre tract. The judgment of the circuit court was for Fisher in said ejectment, and James T. Keathley appealed and that judgment was affirmed by this court in Fisher v. Keithley, 142 Mo. 244.

The defendant James T. Keathley, having been restored to his rights as executor under the will, on the 10th day of March, 1899, made the sale and a deed of conveyance of the land described in the petition in this suit to his son Henry C. B. Keathley, and it is this sale and conveyance, and the subsequent reconveyance by Henry C. B. Keathley to James T. Keathley, that is assailed by the plaintiffs in this case, who are the residuary legatees of Roland Keathley. It was admitted on the trial that the heirship and the relationship of the parties was correctly alleged in the peti-

tion. It was admitted that the land in controversy belonged to Roland Keathley at the time of his death; it was also admitted that James T. Keathley was the duly appointed and qualified executor of the estate; that Abner Barnard was appointed administrator *ad litem* during the will contest and continued as such from 1878 to the 4th of August, 1889, and that on the 14th of August, 1889, H. M. Bramblett was appointed and qualified *pendente lite* from the 14th day of August, 1889, until June 16, 1892, on which date James Keathley was reinstated as executor and has continued as such from that date until now. It was also admitted that James T. Keathley had made no settlement in the probate court since his settlement in 1892, and that the various advancements charged in the will have never been paid or settled. It also appeared that James T. Keathley made his settlement in 1878, prior to the appointment of Abner Barnard as administrator *pendente lite,* and that settlement shows a balance due the executor of $44.51, and also that he held notes due the estate to the amount of $2416.81, which he deposited in the court to be turned over to his successor. The plaintiffs read in evidence the first and final settlement of Bramblett, which showed a balance due the estate of $550.20, and also the final settlement of Barnard which showed a balance due the estate of $232.89. The plaintiffs then read in evidence a deed from James T. Keathley, the defendant herein, to Henry C. B. Keathley, dated March 11, 1899, and filed for record March 13, 1899. This deed recited that James T. Keathley, executor of the last will of Roland Keathley, was a party of the first part, and Henry C. B. Keathley was a party of the second part, and recited that Roland B. Keathley at the date of his death was seized in fee-simple in his own right of the two tracts of land in this suit. One tract contained forty-six acres and the other about forty-three acres. The deed then recites that Roland Keathley by his last will ordered

and directed his executor to sell and convey said tracts of land, and that James T. Keathley was the only acting executor of said will, and then proceeded to recite that James T. Keathley, in pursuance of the express provisions and requirements of said will, did expose and offer said lands at public sale to the highest bidder for cash at the late residence of Roland Keathley, deceased, on the 10th day of March, 1899, first having given due notice of the time, terms and place of sale by posting bills and by publications in the Ralls County Record, and that at said sale Henry C. B. Keathley was the highest and best bidder for each of said tracts of land for the sum of $750, and both said tracts were sold to him. In consideration of said sum of $750 the said executor bargained and sold said land unto Henry C. B. Keathley. This deed was duly acknowledged and in the usual form. Plaintiffs then read in evidence a deed from Henry C. B. Keathley to James T. Keathley dated October 24, 1899, and duly recorded in the recorder's office, which deed was a warranty deed, and for the expressed consideration of $800. At the time of these sales Henry Keathley lived with his father and ran the home farm for his father, the latter being about eighty years old.

The land was duly advertised for sale at executor's sale and the evidence shows that Henry Keathley procured his brother-in-law, J. O. Caldwell, to bid it in for him. While Henry's bid through Mr. Caldwell amounted to $750, and James T. Keathley acknowledged in the deed he had received that sum in cash, as a matter of fact, Henry Keathley, according to his own testimony, only paid the sum of five dollars at the time of the execution of the deed, and did not give his note or any other evidence of his indebtedness to his father for the balance of the consideration named in the deed. He continued to live with his father, and in the fall of 1899 sowed twenty acres of this land in wheat. Thereafter, on the 24th of October,

1899, he reconveyed the land to his father for the recited consideration of $800, and the evidence of both James T. Keathley and Henry C. B. Keathley establishes that the father only gave Henry fifty dollars for the land in the shape of some hogs. James T. Keathley was pressed by counsel for the plaintiffs to state what consideration his son actually paid him for his executor's deed, and the only answer elicited from him was that his son "satisfied him and made the matter of consideration satisfactory to him."

James T. Keathley has never made any settlement in the probate court since his reinstatement as executor in 1892, and has never charged himself with the amount which he acknowledged to have received from his son for the land at his executor's sale thereof.

. Other facts may be stated in the course of the opinion.

I. Defendant contends that Henry C. B. Keathley was a necessary party to this suit, and that the court erred in rendering judgment without having him before the court. That he was not a party is apparent on the face of the petition, and if he should have been joined the defendant, under the express requirements of our code, should have taken advantage of this defect of parties by demurrer, but failed to do so. Moreover, he answered to the merits and did not raise this question of non-joinder in his answer. Under these circumstances, it is clear that the defendant waived his point, but under the evidence in the case, it is apparent, we think, that Henry C. B. Keathley was a mere conduit for the passing of the legal title to his father James T. Keathley, and having parted with all his interest in the land by his deed to his father he was not a necessary party. [Merry v. Fremon, 44 Mo. 518; Jackman v. Robinson, 64 Mo. 289; Schneider v. Patton, 175 Mo. l. c. 726; Dameron v. Jameson, 71 Mo. l. c. 100.]

II.  It is insisted that the circuit court erred in
rendering judgment for partition, because the land was
in the exclusive, adverse possession of the defendant,
James T. Keathley.  The pleadings and evidence show
that the plaintiffs were not in the actual possession of
the land.  Indeed the petition alleges that James T.
Keathley under said deed to him has claimed and had
the exclusive use and occupation of the said real estate,
and has during the whole of the said time taken unto
himself all the rents, issues, products and profits of
said estate, and has failed and refused to account there-
for.  In support of their contention counsel for the
defendant have cited numerous decisions of this court,
which unquestionably establish that suits in partition
brought under the statute and not equitable in
their nature cannot be maintained when the defendant
is in the adverse possession of the land involved, and
plaintiffs in such cases will be remitted to their action
of ejectment, but in Dameron v. Jameson, 71 Mo. 97,
this court said: ''This doctrine, in cases to which it
is applicable, is well settled, but no case can be found
in our Reports where the principle was applied in a
proceeding to establish an equitable title, and also for
partition.    When the plaintiff asks for partition,
and the defendant is in the adverse posses-
sion of the property, the courts refuse to partition the
land between them, until plaintiff establishes his title,
and a suit in ejectment is the proper proceeding for
that purpose; but where, as here, the plaintiff has an
equitable title, and asks the aid of the court of equity
to establish it, if the court ascertain that he has an
interest, and what that interest is, the doctrine that
partition cannot be had when the defendant is in the
adverse possession of the premises, does not apply.
The decree establishes plaintiff's title, and under it
the court may put him in possession, and a suit in eject-
ment becomes unnecessary.  The court, having acquired
jurisdiction of the cause, may proceed to determine

the whole controversy by decreeing a partition of the premises. [Rozier v. Griffith, 31 Mo. 171.]"

So here the testator's will having conferred a power of sale upon the executor and the executor having sold and made his deed to Henry C. B. Keathley, and Henry C. B. Keathley having reconveyed the same to the executor, James T. Keathley had the apparent legal title to the land and plaintiffs as devisees and legatees of Roland Keathley could not have maintained ejectment for the land or recovered the rents and profits, but were driven to their equitable action first to set aside these deeds and to compel an accounting by James T. Keathley for the rents and profits, upon the familiar rule of this State that when a court of equity once acquires jurisdiction of the subject-matter and of the parties, upon any recognized branch of equitable jurisprudence, it will do full and complete justice between the parties. [Paris v. Haley, 61 Mo. 453; Savings Inst. v. Collonious, 63 Mo. 295.]

The decree of partition is also assailed on the ground that it is in contravention of the will of Roland Keathley and contrary to the testator's intention as expressed therein. Section 4383, Revised Statutes 1899, provides: "No partition or sale of lands, tenements or hereditaments, devised by any last will, shall be made under the provisions of this article, contrary to the intention of the testator expressed in any such will." This statutory provision has been enforced in numerous cases by this court. As was said by NAPTON, J., in Ex parte Cubbage, 62 Mo. 368: "Our partition law is very broad, but it at least provides that a partition cannot be made in contravention of a will. Indeed, if the contrary was held, there would be no use in our statutes allowing a testator to make a will." [Stevens v. De La Vaulx, 166 Mo. 20; Sikemeier v. Galvin, 124 Mo. 367; Lilly v. Menke, 126 Mo. l. c. 211.] But while it is too plain for argument that partition cannot be made in contravention of a will, it does not

mean that the courts have no power whatever to decree a partition among the devisees and legatees and no power to construe the meaning of a will and carry into effect its provisions, but simply means that no court either at law or in equity can order a partition contrary to the provisions of a will, that is to say, while the court will not disturb the relative claims of the various devisees and legatees named in the will, it is not shorn of its power to determine what the respective interests of the parties are and work out and decree those interests according to the principles of law or equity in the given case. [Spratt v. Lawson, 176 Mo. 182; Sikemeier v. Galvin, supra.]

The provision of the will of Roland Keathley which the defendant asserts was disregarded and contravened by the decree of partition, was as follows: ''Second, I desire my executor heretofore mentioned, as soon after my death as can conveniently be done, to sell at public sale, at my residence, all my effects, real, personal or mixed, first all my household, kitchen and other furniture and personal property and as soon after as convenient all my real estate excepting 110 acres, which will be hereafter described and designated. Said sales to be made and the money arising therefrom collected within or not exceeding one year after my death; the money thereof arising after setting apart a sufficient sum to pay off all costs of administration, to be distributed to my children as follows:'' (here follow specific bequests and legacies to the various children and grandchildren of the testator with the directions as to taking into account various advancements).

The defendant insists that a proper construction of this item of the will vested the title to this land in the executor with power to sell. Whereas the plaintiffs insist that this direction in the will to sell said real estate amounted to a conversion of the real estate

230 Sup—15

into personalty, and that in equity the said real estate will be treated as personalty for the purpose of distribution among the devisees and legatees, and moreover that the power conferred upon the executor was limited and intended to be executed within one year after the death of the testator, leaving no discretion in the executor as to the time of sale. It will be observed that the will does not devise the land to the executor with power to sell but simply "desires" that the executor shall sell the land within twelve months after the death of the testator and then distribute the proceeds as directed in the subsequent clauses of the will.

In Emmons v. Gordon, 140 Mo. 490, in a proceeding to compel the executor to account, among other things, for the proceeds of certain land sold by him in the State of Texas under the power conferred upon him by the will, the question was whether or not the executor and his sureties could be held liable for the moneys received by him for the Texas land, and this court said: "In Wilson v. Wilson, 54 Mo. 213, it is held that the difference between an administrator and an executor lies in the fact that the former derives his power from appointment by the probate court, and has no power until appointed, while an executor derives his power from the will, and the property vests in him from the time of the testator's death. The expression made use of in that case to the effect that the real estate belonging to the testator at the time of his death vested in his executor at that time is not to be understood as vesting the title absolutely and unconditionally in the executor, but rather the power of disposition, for under our laws real estate upon the death of the testator passes to his heirs, subject to the power of disposal conferred upon his executor by the will, and where the will, as in the case in hand, directs that his lands shall be sold by his executor, it is clear that he is given but the naked power to sell, and that he

has no interest in the land.  [Herbert v. Smith, 1 Saxtons Ch. (N. J.) 141.]''

In Aubuchon v. Lory, 23 Mo. 99, it is said: ''The real estate of a deceased person descends, upon his death, to his heirs, or passes to the devisees under his will.  By the common law the personal representative, whether executor or administrator, takes no interest in it, and our statute gives him nothing but the naked power to sell for the payment of debts, or to make short leases, under the direction of the county court.''

In Francisco v. Wingfield, 161 Mo. l. c. 561, it was said by this court: ''The direction to sell the real estate for the purpose of administration amounts to a conversion of the land, and the proceeds thereof became personal assets for which Wingfield as administrator *de bonis non,* and not as trustee, must account in the probate court.''  And again, in the same case, it was said: ''It will be observed that the will in the present case directed an absolute and peremptory sale of the real estate by the executors.  This, we think, operated as a conversion of the same into personal property, if not from the death of the testator, at least from the date of sale.''

In our opinion the testator by this will intended to convert the real estate involved in this suit into personal property along with all the other personal estate and to have the whole sold by his executor, but that he did not intend and did not vest the title to the realty in his executors, but it was a devise for the benefit of his heirs and devisees, and under the allegations of the fraudulent disposition of this property by the executor, whereby he caused the title to be conveyed to himself, in fraud of the devisees, the circuit court had ample jurisdiction, as a court of equity, to set aside the deeds as fraudulent, and to cause the same to be sold and the proceeds divided in accordance with the will of Roland Keathley, and the decree of

partition was not in contravention of the will of Roland Keathley, but effectuated the purpose of the testator,

Neither do we think that the fact that the defendant has never made a final settlement of the estate of Roland Keathley constitutes a bar to the jurisdiction of the circuit court to entertain this bill for partition. The Legislature of this State, by section 4384, Revised Statutes 1899, has provided that partition of lands may be made before final settlement of the estate, where "the personal property or other real property not already partitioned, belonging to such estate, is more than sufficient to pay all claims and demands against the same." And the circuit court having jurisdiction of the partition case is authorized to inquire into and determine that question.

In Chrisman v. Divinia, 141 Mo. 130, this court had this identical question under consideration. In that case, as in this, it was urged that the court had no jurisdiction over the subject-matter of the suit, because of the pendency of the administration proceedings in the probate court, in the course of which the administrator had taken possession of the land and had a tenant in charge for the purpose of securing the rents and profits to the estate under administration, but it was said that section 7143, Revised Statutes 1889 (Sec. 4384, Revised Statutes 1899), "clearly sanctions the partition of land before final settlement of the estate to whose demands the land may yet be subject. Such a speedy partition is obtainable only upon the conditions named in the statute, but it cannot justly be said to be forbidden, or beyond the jurisdiction of the court that is otherwise authorized to decree the partition." This administration was begun in 1878 and has been pending over thirty years.

Aside from the defendant's claim in his answer, there is no evidence of any indebtedness against the estate. The last settlement of the defendant himself filed prior to the appointment of Barnard as admin-

istrator *pendente lite* showed a balance due the executor of $41.61, with notes in his hands due the estate to the amount of $2416.81, which he turned over to his successor. And the statement of Bramblett as administrator *pendente lite* in 1892 showed a balance due the estate of $550.20, and the final settlement of Barnard in 1899 showed a balance of $232.89. No creditor so far as appears has ever sought a sale or renting out of these lands for the payment of debts. The probate settlements showed over five hundred dollars cash in the estate in addition to notes when the defendant was reinstated as executor in 1892, so that the only claims which could be urged against the partition of this land are those which are pleaded by the defendant by way of set-off. The estate has personal assets of several hundred dollars with no claims of outside creditors to be adjusted and paid. So that in so far as the pleadings in this case go, we are concerned now on this point only with the claims of the defendant himself.

One of these claims is for costs paid on the 28th of August, 1890, in the case of Owens v. Sinklear et al., being a suit to set aside the will of Roland Keathley, to the amount of $357. That cause was appealed to this court and the judgment was affirmed, in all things sustaining the will of Roland Keathley. In that case some of the devisees of Roland Keathley sought to set aside his will, and John C. Keathley filed his separate answer in which he asked that the whole instrument be sustained as the will of his father, and the judgment was affirmed. Had the will contest been successful it would not have been any profit to the estate of Roland Keathley, but would have simply deprived John C. Keathley of the one hundred acres of land and increased the shares of the residuary legatees. James T. Keathley, the defendant herein, was among those who assailed this will, so that it cannot be said that this money which he expended for himself and other legatees in raising the issue of ademption was a proper

expenditure by him as executor.   Certainly there was no evidence tending to show any express agreement upon the part of the other legatees, particularly John C. Keathley, against whom that suit was urged, to reimburse the defendant for that cost. Moreover, the Statute of Limitations was pleaded by the plaintiffs herein and the circuit court found against that claim.   As a charge against the estate of Roland Keathley and one to which the defendant would be entitled as executor in the adjustment of his accounts with the several legatees and the plaintiff herein, it would seem that the statute was a complete bar to this claim, and certainly it was not a charge against the estate which would justify the claim that the circuit court had no jurisdiction, because the settlements of the executor's accounts upon a matter wholly within the jurisdiction of the probate court.   This claim originated long after the death of Roland Keathley, and was not incurred in endeavoring to maintain his will or in protecting his estate.

The other claim is one for expenditures in the ejectment case brought by John P. Fisher against the defendant James T. Keathley.   This suit was brought for the possession of the one hundred acres of land devised to John C. Keathley and conveyed by him to Fisher.   The defendant James T. Keathley was in possession of this land in his capacity as an individual. He was under no obligation to take possession of this property in defiance of his father's will, and if he chose to defend his possession by interposing the will and claiming ademption of the devise, clearly it was a burden which he had voluntarily assumed.   This tract was not included in the land which his father authorized him to sell.   That case also reached this court and was reported in 142 Mo. 244, and the will was sustained in all of its parts and the defense of ademption was rejected.   We think the circuit court, independently of the question of the Statute of Limitations,

correctly ruled that he could not set off the moneys he paid for the costs and expenses of that case against the right of partition in this suit. And there does not appear to have been any promise by the other devisees and legatees to reimburse him for such expenditures or that his taking possession and defending the same against Mr. Fisher was at the request of the other to reimburse him.

The circuit court allowed the defendant the taxes which he had paid on these lands for the years from 1892 to 1905 inclusive. We think the plaintiffs cannot complain of this action of the court. The taxes were a lawful charge against the land and it was the bounden duty of the executor, if he had funds, to pay the same, and if he paid the same out of his own money he was entitled in equity and good conscience to have the same refunded to him by the other heirs. But we are not called upon at this time to determine whether the evidence was sufficient to support the court's finding, but whether it had jurisdiction to determine the matter at all. The jurisdiction exercised by courts of equity over the dealings of persons standing in fiduciary relations has always been regarded as one of a most salutary description, and one of the most important branches of equity jurisprudence is its power to regulate and enforce trusts, and to examine into the conduct of trustees in relation to trust funds in their charge. The bill in this case seeks primarily to set aside certain deeds to the devised land on the ground of both actual and constructive fraud, and to reinvest the title of said land in the residuary legatees and to decree that the defendant, James T. Keathley, holds the title in trust for the legatees equitably entitled to the proceeds thereof; and the circuit court, as a court of equity, having acquired jurisdiction both of the subject-matter and of the persons interested in said estate, had full power to adjust all the equities and make partition of the

estate, notwithstanding the defendant trustee was in possession of the land.    Accordingly, we are clearly of the opinion that the circuit court had full jurisdiction to inquire into the set-offs pleaded by the defendants, and to determine whether they were proper charges against the equitable estate which belonged to these plaintiffs as the residuary legatees of Roland Keathley, and in so doing the circuit court did not trench upon the jurisdiction of the probate court of that county.

Having reached the conclusion that the circuit court had jurisdiction, we are brought to the main contention in the case, that the purchase of this land by Henry C. B. Keathley from his father, the executor, and the reconveyance of the land by Henry to his father, was fraudulent as against the other residuary legatees.    By reference to the will, it will be recalled that the testator directed that this land should be sold within twelve months after his decease, and the proceeds, along with the proceeds of all of his personal estate, should be divided among his children and grandchildren as specifically directed in his will, taking into account all advancements.    Roland Keathley died in 1878.    It appears that his children were not satisfied with their father's will and brought a contest to set the same aside, with the view to defeat a special devise to his son John C. Keathley of one hundred acres of land; that suit resulted in sustaining the will in its entirety, but this court held that the question of ademption of the one hundred acres devised to John C. Keathley had no place in that litigation.    John C. Keathley having sold this one hundred acres to Fisher, the defendant, who was in possession thereof, refused to give possession to Fisher, and compelled the latter to sue him in ejectment for the same; that suit resulted also adversely to the defendant, and thus this estate was kept in litigation for nearly twenty years, principally by the action of the defendant himself.    Finally in March,

1899, the defendant advertised the land involved in this suit for sale, under his power as executor of the will. The sale was advertised to be for cash, and was advertised, so far as the notices were concerned, in full compliance with the law. Prior to the sale, Henry C. B. Keathley requested his brother-in-law, J. O. Caldwell, to attend the sale and bid on the land for him, and at the sale Caldwell did bid in both tracts for the sum of $750. As a matter of fact, and beyond all controversy, Henry Keathley only paid five dollars of the amount of his bid when he received the executor's deed therefor. He did not give his father his note or any other evidence of his indebtedness for the said land. The executor in his deed acknowledged that he had received the full amount of the said purchase money. The son continued to live with his father and sowed twenty acres of the land in wheat in the fall of 1899. Thereafter, on October 24, 1899, Henry reconveyed this land to his father, James Keathley, for the recited consideration of $800. The testimony of both James T. Keathley and Henry Keathley is to the effect that the father gave the son fifty dollars in hogs for this reconveyance. James T. Keathley, after his reinstallment as executor in 1892, never made any settlement in the probate court, and charged himself with the purchase money for this real estate. He took no note or memorandum or other evidence to show that his son Henry was indebted to the estate for the purchase money of this land. There is an absolute failure of all evidence as to any agreement or understanding between the father and the son as to when, if ever, the residue of this purchase money was to be paid. While the sale was well advertised, the testimony tends to show that the land brought less than half of its value and it was never reported to the probate court for approval. While it is true that the inadequacy of price is not ordinarily sufficient to set aside a sale, it is always a circumstance to be weighed in connection

with other evidence as to fraud. The circuit court found that the sale of this land and its purchase by Henry Keathley and its reconveyance to the defendant James T. Keathley, the executor of the estate, was the result of a fraudulent combination between the father and the son to place the legal title of this land in James T. Keathley in fraud of the rights of the residuary legatees. When all the circumstances of this transaction are taken into consideration, the bidding in of the land by the son, the fact that he only paid five dollars of the $750 which he bid for it, his failure to give a note or any evidence whatever for his indebtedness for the same, the fact that the land was advertised for cash and no cash paid except the five dollars, the reconveyance by him that fall to his father for the alleged consideration of fifty dollars, the failure of the father to make any report of the sale, his failure to make any settlement in the probate court charging himself with the proceeds of the sale, his receipt of all the rents, issues and products of this land from 1900 to 1905 inclusive, the inability of James T. Keathley when on the stand to explain what his son paid him for the land, or was to pay him for it, were amply sufficient to justify the decree of the circuit court that this transaction was fraudulent and was but a pretense resorted to to place the title to this land in James T. Keathley in fraud of the rights and in violation of his fiduciary relation to the other legatees.

We are met with the insistence that plaintiffs could have proceeded in the probate court to require the defendant as executor to make his settlement and report the purchase money, and have brought suit on his bond if necessary. In other words, the plaintiffs should have ignored the fraudulent acts of defendant in procuring the title to the land to himself and resorted to the doubtful and elusive expedient of a suit on his bond, to be met, if they failed therein, with the claim that they had condoned the fraud and elected to

affirm the sale, and could not retrace their steps and assail the fraudulent sale of the executor to himself. This contention ignores the charge and proof that the land was sold for about one-half of its real value and that defendant, although their trustee, was appropriating this advantage to himself to the detriment of plaintiffs. While plaintiffs might have waived the fraud and proceeded to compel defendant to report his alleged sale and account for its proceeds, they had the right to look to the lands which the testator had bequeathed to them and were under no obligation to overlook defendant's fraud.

They had the clear right to assail the fraudulent acts of the executor, set the same aside, and look to the fund which the testator had created for their benefit, and call upon a court of equity to require their trustee to account for the trust estate, and thus exercise a jurisdiction as old as courts of chancery themselves. We do not think that it lies in the mouth of the executor to suggest other modes against his misconduct and misappropriation of the estate in his hands. It is sufficient that plaintiffs have proceeded in a court having full equitable powers to set aside the fraudulent sale and with full power to execute the trust created in the will of Roland Keathley, after the utter failure of the executor to perform his trust, and to adjust once for all this mismanaged estate, which should have been collected and distributed among the legatees thirty years ago.

Complaint is made that the circuit court charged the defendant with rents and profits of the land. In a proceeding in equity for partition an accounting for rents and profits is proper. The defendant James T. Keathley stood in the relation of a tenant in common to the other residuary legatees and had been asserting an exclusive claim to the same since 1899, and it was entirely proper to charge him with the same. We have examined the proofs as to the value of these rents

during the years 1900 to 1905 inclusive and we think the evidence supports the finding of the circuit court.

While the circuit court did find that James T. Keathley and Henry C. B. Keathley were insolvent and there was no direct testimony to that effect preserved in the record, it is obvious that the decree does not rest upon that finding and that finding does not constitute reversible error, as the decree stands upon other considerations of law and fact. While in an appeal on the equity side of the court, this court is not precluded by the findings of the circuit court, where the testimony, as in this case, was largely oral, much deference is always shown to the finding of facts by the circuit court for the reason that a trial court has exceptional advantages in observing the witnesses on the stand and their manner of testifying and is in a better position to weigh the credibility of witnesses than we possibly can be.

After a careful reading of the testimony, we have been unable to find anything that would require us to reach a different conclusion from that at which the circuit court arrived and its decree appears to have been based upon the evidence in the cause and is an equitable and just determination of the issues before it, and it is affirmed. *Burgess* and *Fox, JJ.*, concur.