G. A. HARTKOPF, Appellant, v. WILSON·ELLIOTT and CITY OF ST. LOUIS.—99 S. W. (2d) 25.

Division Two, November 17, 1936.*

*Edwin A. Smith* for appellant.

*NOTE: Opinion filed at May Term, 1936, August 20, 1936; motion for rehearing filed; motion overruled at September Term, November 17, 1936.

*Alphonso Howe* and *William H. Allen* for Wilson Elliott; *Edgar H. Wayman* and *Louis A. McKeown* for City of St. Louis.

COOLEY, C.—Action for damages for personal injuries. We shall refer to appellant and respondents, respectively, as plaintiff and defendants. At the close of plaintiff's evidence the court gave peremptory instructions directing verdicts in favor of each defendant. Plaintiff thereupon took an involuntary nonsuit with leave to move to set the same aside. Such motion was duly filed and was overruled and plaintiff appealed.

Defendant Elliott owned an apartment building situated on the north side of McPherson Avenue, an east and west street in a residential part of the city of St. Louis. The central portion of McPherson Avenue was paved for vehicular traffic, with a curb at the north side of the pavement. North of and adjacent to said curb there was a parkway or grass plot, eight to ten feet wide, and immediately north of that grass plot, adjacent to the property line which constituted the north boundary line of the street, there was a concrete sidewalk some six feet or more wide. Extending from said sidewalk south to the curb (across the parkway) there was a concrete walk about eight feet wide. This walk was in front of Elliott's apartment house. We shall refer to this walk as the concrete walk, to distinguish it from the above mentioned sidewalk along and adjacent to the property line on the north side of the street. The grass plot referred to extended eastward and westward from Elliott's building, in front of residential buildings on each side of Elliott's. Its purpose was evidently for ornamentation of the street and the abutting properties.

About ten years before the accident involved herein Elliott had erected in the grass plot above described an iron railing for the purpose of protecting the grass plot. It was located eighteen or twenty inches north—that is inside, toward the property line—of the curb. It was a substantial, solid railing, consisting of a two inch gas pipe supported by uprights of the same size and material set firmly in the ground. The railing was eighteen or nineteen inches high. It was well constructed and was maintained in good condition. It paralleled the curb to the alley east of Elliott's property, turning there northward along the alley line and across the parkway or grass plot to near the edge of the sidewalk, so as to keep pedestrians from walking across the grass plot—which was the purpose of the railing. The evidence tends to show that the city had actual or constructive knowledge of the erection and maintenance of the railing and permitted its maintenance.

On the night of plaintiff's injury he had attended a party at the apartment of a friend living in Elliott's apartment building. The

party broke up about one o'clock A. M. and plaintiff left to go home. There were a number of automobiles parked in the street next to the north curb, one of which was in front of the concrete walk. In order to get around that car plaintiff, instead of following the concrete walk to the curb, walked across the grass plot and against the railing, falling onto the pavement and breaking his elbow. He testified that he did not see the railing and did not know it was there, though he did not say he was looking or that he could not have seen it had he been observing. There was some evidence to the effect that the automobiles at the curb tended to shut off the light from a street light somewhat east of the place where plaintiff fell and on the opposite side of the street. There was, however, a good electric street light on the north side of the street, just inside the curb line, about sixty feet west of the place where plaintiff fell. In the parkway or grass plot, between said last-mentioned light standard and said concrete walk there were two or three small sycamore trees. They were farther north than the light standard, being about four feet from the curb. Neither the testimony of witnesses nor the photographs introduced in evidence show that the trees prevented the rays of said street light falling upon the railing at the place where plaintiff fell over it. Some of plaintiff's witnesses said that it was difficult to see the railing at the time in question because of insufficiency of light, but admitted that it could be seen when a person got close to it.

Plaintiff's petition charges defendant city with negligence in permitting Elliott to erect and maintain the railing when it knew or should have known that persons would likely cross the street, "in front of said apartment house" in the nighttime, when automobiles would likely be parked at the north curb, casting a shadow upon and about the railing and thus rendering it unnoticeable. Like negligence is charged against Elliott for having erected and maintained the railing and against him it is further charged that he thereby created a nuisance within the meaning of a pleaded city ordinance.

The separate answers of the defendants each denied generally the allegations of the petition and charged negligence on the part of plaintiff, specifying same and averring that whatever injuries, if any, he received were due to his own negligence.

For the disposition we feel obliged to make of the case the foregoing outline of the facts is sufficient.

Respondents have filed a motion to dismiss the appeal because of appellant's failure to comply with our Rule 15, which requires that the appellant's brief "shall distinctly allege the errors committed by the trial court" and shall contain in addition "(2) a statement, in numerical order, of the points relied on, with citation of authorities thereunder." By Rule 16 the failure of an appellant in a civil case to comply with Rule 15 (and certain others) results

in dismissal of the appeal or, at the option of the respondent, continuance of the cause.

In his brief appellant makes the following "Assignments of Errors:"

"1. The Court erred in giving its instructions in the nature of demurrers at the close of the plaintiff's case in chief.

"2. The Court erred in requiring the plaintiff to take an involuntary nonsuit at the close of the plaintiff's case in chief, upon the Court's giving instructions in the nature of demurrers at the close of the plaintiff's case in chief. .

"3. That the action of the Court is against the law as applied to the evidence in this case, and against the law as set out in the instructions given by the Court in the nature of demurrers at the close of the plaintiff's case in chief."

. Under "Points and Authorities" he sets out, *verbatim*, assignment No. 1, following it with a list of forty cases. Then follows a similar repetition of assignments 2 and 3, and after each this statements: "Appellant cites the same cases as cited under point No. 1." Except for a statement of facts preceding the "assignment of errors" such is the entire brief. No attempt is made to point out appellant's reason or reasons for the assertions he makes nor to indicate the applicability of any of the numerous cases cited to any particular question or issue in the case. The case involved several questions. The court may have given the peremptory instructions because it was of the opinion that no negligence on the part of defendants had been shown, or because it believed that under the evidence plaintiff had been, as a matter of law, guilty of contributory negligence, or that he alone was at fault. The questions of Elliott's right to maintain a guard or railing and the kind or character thereof, for protection of the grass plot, and of the city's right to permit him to do so were issues in the case. In these circumstances it seems to us that our rule, given the most liberal interpretation, should be held to require of appellant something more definite and specific than merely a statement in the brief that the court erred in giving the peremptory instruction followed by a list of cases with no indication of how or to what issues they are supposed to apply.

In dismissing an appeal for failure of the appellant to comply with Rule 15 this court, in Frick v. Millers' Natl. Ins. Co., 279 Mo. 156, 158, 213 S. W. 854, 855, well said: "This rule works no undue hardship upon the appellant, but when followed saves this court much time and labor in reviewing the case. In fact such a rule is well-nigh indispensable to the proper dispatch of appellate work."

. In Aulgur v. Strodtman, 329 Mo. 738, 46 S. W. (2d) 172, 173, the court said: . ' . . . .

"In an assignment of errors the appellant should distinctly state the errors relied upon for reversal. Though separately alleged, they

frequently appear as broadly expressed in a motion for a new trial. It is doubtless because of such generality of presentation that subdivision 2 of above Rule 15 further requires the appellant to particularize by furnishing 'a statement, in numerical order, of the points relied on, with citation of authorities thereunder.' "

The court further said that the requirement for particularization in the statement of points relied on had been frequently emphasized, citing cases. For illustration we quote some of the assignments with which the court was dealing in the Aulgur case, as follows:

" 'I. The Court erred in overruling plaintiff's exceptions to the Referee's report filed in said cause and each and every one of them.

" 'II. The Court erred in refusing to sustain each and every one of the exceptions of the complainant to the Referee's report.

" 'III. The Court erred in decreeing that the defendant was entitled to a decree and judgment on the plaintiff's cause of action.

" 'IV. The Court erred in approving the Referee's report.

" 'V. The court erred because the decree and judgment are against the evidence.' "

There were several other assignments, equally general. It was held that "Even if each of the above could be deemed sufficient as an assignment of error, it is apparent that each is too general to serve the purpose of a statement or specification of a point relied on within the meaning of our Rule 15, which requires a statement in numerical order of the points relied on in addition to an assignment of errors."

In Scott et al. v. Mo. Pac. Railroad Co., 333 Mo. 374, 389, 62 S. W. (2d) 834, 840, the court said that while a general assignment that "the court erred in giving Instruction No. 10" was good as an assignment of error, "standing alone it does not comply with our Rule 15, in that it does not distinctly allege what the vice in the instruction is nor the point on which appellant relies."

The foregoing cases and others of like tenor illustrate the application of our Rule 15. While none of them present the precise situation we have here, viz., a case wherein the trial court directed a verdict for the defendant, which requires examination of the pleadings and evidence—the Aulgur case presenting, perhaps, the most nearly parallel situation—yet we think the reason and purpose of the rule as exemplified and applied in those cases justify a similar interpretation and application in the circumstances of the instant case.

We have discussed particularly assignment or point No. 1. Of the others it is sufficient to say that point No. 2 is in effect but a

1014

repetition of No. 1, equally general, and No. 3, if it means anything, is the same. In any event it is obviously too general and indefinite as a statement of a point. In our opinion the motion to dismiss the appeal must be sustained. It is so ordered and the appeal is dismissed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.