HENRY BERGHORN ET AL., Respondents, v. REORGANIZED SCHOOL DISTRICT No. 8, FRANKLIN COUNTY, MISSOURI, ET AL., Appellants, No. 43258—260 S. W. (2d) 573.

Division One, June 8, 1953.

Motion for Rehearing or to Transfer to Banc Overruled July 13, 1953, in opinion filed.

*Bernard J. Huger, Walter H. Pollmann, Leo A. Politte* and *Frank W. Jenny* for *appellants.*

124

*Boyle G. Clark, William H. Becker* and *E. Massey Watson* for respondents; *Clark & Becker* of counsel.

128

█ PER CURIAM.—Action by plaintiffs as resident taxpayers and parents of children of school age in defendant school districts for and on behalf of themselves and all other resident citizens and taxpayers of said districts for a declaratory judgment and injunctive relief against the said districts, the officers and directors thereof, and the Treasurer of Franklin County, Missouri. The alleged ground upon which relief is sought is that defendants are illegally collecting, receiving and spending public tax monies of the state of Missouri and of the said school districts in support of schools which are not free public schools, but are in fact parochial schools in which a sectarian religion is taught and in which the teachers thereof are controlled and governed by a religious denomination, creed and force and in which the policy of the Roman Catholic Church for the combination of religious and secular education is in effect. Relief is sought against said practices and to enjoin the expenditure of public tax monies by defendants for the support and maintenance of schools that are in fact being managed and administered so as to promote the interests of the Roman Catholic Church in violation of the First and Fourteenth Amendments of the Constitution of the United States and Article I, Sections 5, 6, 7 and 10, and Article IX, Section 8 of the Constitution of the State of Missouri, 1945. The trial court made detailed findings of fact and entered a declaratory judgment and further granted the injunctive relief sought. Defendants have appealed.

█ The jurisdiction of this court is sought to be invoked on this appeal on the ground that the court's judgment is based squarely upon "findings that defendants have violated both the State Constitution and the Constitution of the United States", and that certain issues involved require a construction of such constitutions, but no specific provision of the Constitution of the United States has been cited in appellants' brief under points and authorities and there is no contention that any specific provision thereof has been misconstrued by the trial court, nor is any such contention accompanied by an assignment of reasons the construction is erroneous. Accordingly, no federal constitutional question is presented on this appeal. Robinson v. Nick, 345 Mo. 305, 134 S.W. (2d) 112, 114; City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W. (2d) 372, 380. We take jurisdiction on the ground that the appeal involves a construction of Article I, Sections 5, 6 and 7, and Article IX, Section 8, of the Constitution of the State of Missouri, 1945.

The petition upon which the cause was tried, as amended at the trial, covers some fifty pages of the record. The cause was █ tried upon what is referred to as an agreed statement of facts, but what is in fact only an agreed statement of facts and evidence, covering some eighty seven pages, from which evidence the court made a determination of the ultimate facts in issue and entered its declara-

tory judgment and the injunction decree. The judgment as entered, including the specific findings of fact, the declaratory judgment and the injunction decree covers some thirty seven pages of the transcript. Space permits only a very brief review of the facts.

Defendant Reorganized School District No. 8, hereinafter referred to as District 8 operates and maintains three primary schools. The schools are known as Gildehaus, Ziegenmeyer and Krakow. The children in attendance at these schools are of grade school age. Until 1931 all three of these schools were operated by the Roman Catholic Church with teachers selected by the Church and religious instruction was given in the classrooms in accordance with the rules and practices of said church regarding parochial schools. Thereafter, these school buildings were respectively used by public school districts, to wit, Gildehaus District 41, Ziegenmeyer District 24 and Krakow District 44. These three districts and another were later consolidated in District 8. The public school buildings and sites at Ziegenmeyer and Krakow were sold and the buildings in which the several parochial schools had been operated were continued in use by District 8. Title to the school buildings is still in the name of the Archbishop of the St. Louis Archdiocese and it is held for the Roman Catholic Church. No rent is paid for the Krakow school building, there is no lease and the nuns who teach therein have their living quarters there, within 150 yards of the Roman Catholic Church in that community. The school building at Gildehaus is on the same tract of land with the priest's house, the nuns' house and the Gildehaus Roman Catholic Church. No rent is paid for its use. The spire of the church and the cupola of the school building are each surmounted by a cross. Another school building owned and used by District 8 is on an adjoining tract. One hundred and fifty dollars per year is paid for the use of the Ziegenmeyer school building.

Defendant Rock Hill School District No. 23, hereinafter referred to as Rock Hill, does not maintain and operate a school, but uses portions of its school funds in paying the tuition of those pupils of said district who attend either of the schools of District 8 or attend other districts. By agreement of defendants and the parents, only the children of Roman Catholic families residing in Rock Hill attend the schools of District 8, while the children of non-Catholic parents in Rock Hill are sent to adjoining districts on the west. The tuition is paid by Rock Hill. There is a large Roman Catholic population in Rock Hill and District 8. Only the three schools mentioned are maintained. In addition to legal holidays recognized by the state board of education, the schools of District 8 adjourn for religious holidays, to wit, Feast of all Saints and the Feasts of the Immaculate Conception.

The teachers in the schools at Gildehaus and Krakow are members of religious orders affiliated with the Roman Catholic Church. The

nun teachers at Krakow belong to the Poor School Sisters of Notre Dame, while those at Gildehaus belong to the Sisters of the Adoration of the Most Precious Blood of O'Fallon. These nuns are known and addressed in the schools only by their religious names, not by their legal names. The directors of District 8 have never refused to employ, contract with, or accept a nun assigned to teach in that district by the Mother Superior of one of the above mentioned orders. Since these orders prohibit a nun from living alone, and there is only one teacher at the Ziegenmeyer school, a nun is not employed to teach there, but a Catholic laywoman. The nuns who teach in the schools of District 8 possess the necessary educational qualifications and they are citizens of the state of Missouri and of the United States. There are no religious symbols or insignia of any kind in the school building at Gildehaus or Krakow and only the cross on the cupola at Gildehaus. Religious books, pamphlets, pictures and literature are not distributed. The giving of religious training ▇▇▇ in the class rooms of these schools was discontinued after 1931.

Each of the nuns employed at Gildehaus and Krakow are employed at salaries lower than that ordinarily paid for public school teachers of similar education and experience. In the event a nun does not ask for a renewal contract with District 8, the Mother Superior of the religious order to which she belongs, selects another nun to take her place and the new nun calls on the County Superintendent of Schools, has her educational qualifications to teach approved and then attends a meeting of the school board and enters into a contract to teach. The nuns teaching at Krakow and Gildehaus at all times wear their distinctive religious garb, including the emblems and symbols of their religious order. As members of the respective religious orders to which these nuns belong, they have taken vows of poverty, obedience and chastity. "All gifts, even the smallest are to be given to superiors for general use. * * * Every day teaching sisters are in duty bound to bring to the place appointed by the Superior any money they may have received. * * * The time of a sister belongs to the order." (Poor School Sisters of Notre Dame.) Substantially the same is true for the sisters of the Adoration of the Most Precious Blood of O'Fallon. A sister of this order agrees to live her "whole life in poverty, chastity, and obedience according to the constitution" of the order. "By the simple vow of poverty, the Sister renounces her right to licitly dispose of anything temporal whatsoever having money value, without the permission of the lawful Superior. Therefore, she is not allowed, without due permission, to appropriate anything to herself by accepting, borrowing, or buying, or to dispose of anything by giving, selling, loaning, changing, locking, concealing, destroying or to permit anything to be destroyed through her fault * * * Whatever is acquired by the Sisters, even the Superiors, through labor or in respect of the Institute, must be added to the property of the house or Congre-

gation; likewise, all money and securities are to be placed in the common treasury." Under the church laws (Canon 499) "All members of religious orders are subject to the Roman Pontiff as their supreme superior to whom they owe obedience, also by virtue of their vows of obedience."

As applied to this case the record shows that "The nuns receive their salaries and pay thereout their actual living expenses, income taxes, and payment to the state teachers' retirement fund, and thereafter deliver the balance to the fiscal officer of the religious order of which they are members, with an itemized statement of deductions or pay-outs as aforesaid, which balance becomes a part of the general fund of the particular religious order for use by said order in carrying out its purposes and objectives."

During the school year of 1950-1951, the Catholic pupils in attendance at Krakow and Gildehaus attended mass at 8 o'clock in the morning in the adjoining churches and then received religious instruction from 8:30 to 8:50 o'clock, after which they returned to their school buildings. The nuns who taught in the schools participated in the giving of the religious instruction. Since the beginning of the school term of 1951-1952, many Catholic children who attend the schools of District 8 at Krakow and Gildehaus, attend mass only at 8:00 o'clock. Instruction in the teachings of the Catholic Church is given on Saturday only for the Catholic children in attendance at Gildehaus school and it is given in the Catholic Church at said place. The nuns who teach in the schools at Krakow and Gildehaus attend religious services each morning at the same time the Catholic children attend and during the school year of 1951-1952 they also attended and participated in the teaching of religion at the times when religious instruction was given on Saturdays at the Gildehaus Church. In the conducting of religious services, including mass at Gildehaus and Krakow, it is customary to have altar boys and acolytes serve at the mass in the customary uniform consisting of cassock and surplice. The boys who serve and perform the duties of acolytes and altar boys are drawn from the Catholic pupils at these schools operated by District 8 and they are trained and instructed in the rituals of the said religious services on days other than school days by the parish priest and by the nuns who teach in said schools of District 8. If religious services are to be performed during school hours for weddings and funerals, the nuns in charge of the schools excuse the acolytes or altar boys who attend the school. Daily while the Catholic children are attending religious services before 9 a.m., the non-Catholic children who have arrived at school wait in the school building or on the school ground. During the first half of the school year of 1950-1951, the school buses arrived at the Gildehaus school at 8:00 a.m. and left at 4:00 p.m. Thereafter, the buses arrived at 9:00 a.m. and left at 4:00 p.m. Non-Catholic children who desire to

attend the religious services with the Catholic children on school days before school hours are permitted to do so by the church authorities. Since November 27, 1951 Catholic children are brought to the Gildehaus school on Saturdays in buses for religious instruction in the Catholic church and the nuns who teach them on school days go with the children to the church where the nuns share in the religious services and in the giving of religious instructions.

It is agreed that "the intent of the Catholic Hierarchy in establishing and maintaining parochial schools is to provide a means of furnishing a secular and religious education and training to the children of the Catholic faith. Ordinarily such schools are located close to a church and employ members of religious orders dressed in their distinctive religious habits. These teachers are subject to the control of the church rather than to that of a school board. Religion is taught during school hours as an integral part of the curriculum."

The agreed evidence further shows that recognized educational authorities recognize that: "Children of grade school age are underdeveloped and are particularly susceptible to the influence of their teachers and surroundings and the actions of the children with whom they are associated. That environmental surroundings in education of the individual are significant."

The agreed statement proceeds: "With reference to the case in question, the close proximity of the schools to the churches, the fact that they are owned by the churches, and, in one instance, the Gildehaus school is located on the ground on which the church, the priest's house, and the nuns' home are located; the fact that at Krakow and Gildehaus schools the teachers are garbed in the clothing of their religious order and wear the symbols of their order and at Krakow the nuns live in the school building and are called by their religious names rather than their secular names; that the church is open to religious services in the morning shortly before the opening of school; that church services are attended by the nun teachers; that children who arrive at the schools and do not attend religious services remain in the school building or on the school ground during such religious services; that acolyte or alter boys are excused from school during school hours to attend religious services; either weddings, or funerals, in the adjoining church; that religious instruction is given at the church on days other than school days participated in by the nun teachers who teach in the schools during school days; that the priests live in close proximity to the two schools mentioned herein; that one school building bears a cross; and the like, tends to condition the child in the acceptance of the Roman Catholic faith. Similar conditions existing under such religious influence by any other sectarian religious faith would result in the conditioning of the child to such sectarian faith."

The trial court found "that in the operation of the schools * .* * known as the 'Gildehaus Schools' and the 'Krakow School' the policy and laws of the State .of Missouri with respect to the separation of the Church and the State have been ignored and violated; that the policy of the Roman Catholic .Church with respect to education is in effect wholly or partially in said schools; that one of the schools at Gildehaus and the school at Krakow were prior to 1931 operated by the Roman Catholic Church as private sectarian parochial schools under and in accord with the Roman Catholic Church laws and policies; that while there have been some minor changes in the method of operation of said schools since their induction into the free public school system, the changes made are not sufficiently substantial to make either of said schools a free public school; that each of said schools including the district owned school at Gildehaus is in fact controlled in the main by members of recognized orders of the Roman Catholic Church and by officials thereof; each of said schools to a great degree is managed and administered in a manner to promote the interests and policies of the Roman Catholic Church and of adherents of the Roman Catholic faith * * *." The court found that said schools at Gildehaus and Krakow were not free public schools within the meaning of the Constitution and laws of the State of Missouri; and that said schools were ineligible for support from public school funds and by public authority.

The court found "that said nuns and each of them by their oaths cease to exist as free citizens and as individual economic units, and during their service execute contracts, receive and pay out money in taxes only in a nominal perfunctory and formal sense, while in reality, acting as instruments and agents of their religious orders, engage in executing the policies of the Roman Catholic Church; that by the very nature of their obligations and of the control to which they submit themselves, the final and absolute control of the secular or sectarian existence and personal actions of the nuns * * * is vested in the Church authorities; that because of the character of their obligations said nuns are disqualified from teaching in any public school in the State of Missouri; * * * that in case of conflict between the directions and the orders of the defendant school directors * * * with the obligations, orders and directions of the superiors in their respective religious orders or the Roman Catholic Hierarchy the nuns and each of them by virtue of their oaths of obedience (would) be required to ignore the orders of the secular school authorities and obey the orders of the religious superior and Church Hierarchy."

The court further found that the arrangement with the Roman Catholic Church for the joint operation of motor buses for transporting pupils to the Gildehaus school and to the Gildehaus church constituted an unlawful intermingling of the funds of the said school district and of the St. John's Catholic Church, and the use of public

monies for joint operation of two motor buses was in aid of a religious creed and church for a sectarian purpose, and that said arrangement constituted a donation of personal property for a religious creed and church and for sectarian purposes and was therefore unlawful.

In view of the issues raised on this appeal, it will not be necessary at this point to review the detailed provisions of the declaratory judgment entered on count one. Under count two, the court enjoined and restrained defendants from continuing the arrangement for the joint operation of motor buses and from using any public monies for the joint operation of motor buses under an arrangement with the Roman Catholic Church, enjoined and restrained defendants from using or paying any public monies for the maintenance and support of either of the Gildehaus schools or the Krakow school, as presently conducted and maintained, enjoined and restrained defendants from employing as teachers any nun or nuns of the order of the Sisters of the Adoration of the Most Precious Blood of O'Fallon or any nun or nuns of the Order of the Poor School Sisters of Notre Dame and from employing as a teacher in any public school within said District 8 "a person wearing a uniform garb prescribed by a religious order of the Roman Catholic Church", and enjoined defendants from conducting any school in said district upon property and in any building belonging to the Roman Catholic Church unless said property be removed and separated from premises on which is located any nuns' home, church buildings, or priest's home and unless the premises be validly leased for a specific term under an agreement removing said property from the control of the church by the terms of the lease. The Rock Hill District and its officers were enjoined and restrained from paying public funds belonging to said district for tuition to District 8 for resident pupils of the Rock Hill District attending either the Gildehaus or Krakow schools in District 8. We need not review further the detailed provisions of the injunction decree.

 In undertaking to review this cause on appeal, we are confronted with the fact that the appellants' brief does not comply with Supreme Court Rule 1.08 in that, under points and authorities, the points relied on do not "specify the allegations of error." Appellants, under "points and authorities", have ignored the fact that this cause was tried and determined in the trial court and that an appeal was taken from a specific judgment entered therein. The points listed, for the most part, are abstract statements of law, which apparently have been taken from a trial brief, without any attempt whatsoever to directly relate them to any specific provision of the thirty-seven page judgment from which the appeal was taken. Such points present nothing for review on appeal. Further, there is no reference to the fact that a specific judgment has even been entered in the cause and the word "error" does not appear in this part of the brief

because there are neither assignments of error nor any attempt to specify wherein the judgment is erroneous or the points or reasons upon which appellants rely. It is well settled that assignments of error, which do not undertake to point out wherein the error lies present nothing for review. Majors v. Malone, 339 Mo. 1118, 100 S. W. (2d) 300; Hartkopf v. Elliott, 339 Mo. 1009, 99 S.W. (2d) 25, 26; Scott v. Mo. Pac. R. Co., 333 Mo. 374, 62 S.W. 834, 840; Metropolitan Properties Co. v. Rideout, 346 Mo. 787, 142 S.W. (2d) 1055; Gelhot v. Stein (Mo. Sup.), 174 S.W. (2d) 174. In the printed argument appellants complain of various portions of the judgment entered against them, but such presentation of complaints presents nothing for review. Eisenbarth v. Powell Bros. Truck Lines (Mo. Sup.), 161 S.W. (2d) 263, 268; Scott v. Mo. Pac. R. Co., supra. Appellants in their reply brief have set out certain specific assignments of error, but a reply brief is not the place to specify errors for review, such assignments do not comply with our rules and properly present nothing for our consideration. Smith v. Thompson, 346 Mo. 502, 142 S.W. (2d) 70, 76 (12); Nemours v. City of Clayton, 351 Mo. 317, 172 S.W. (2d) 937, 939; Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W. (2d) 163, 167. Except for the public interest in this case, the appeal should properly be dismissed for the reasons stated and without any consideration of the appeal on its merits.

Appellants' reply brief presents the following points which will be ruled, although they fail to comply with the rules of this court. (1) "The trial court erred in recognizing respondents' right to sue"; (2) "The trial court erred in finding that the teachers in defendant schools are not indispensable parties"; and (3) "The trial court erred in finding that defendant schools are not free public schools and in enjoining their operation, in that there was no finding by the trial court that children in defendant schools have been influenced or coerced by any sectarian matter." In ruling these assignments we will refer to some arguments appearing in appellants' original brief as well as in the reply brief.

Appellants' first and principal point appears to be that "plaintiffs have no standing to bring this suit as taxpayers because they cannot show * * * special pecuniary injury or * * * damage peculiar to themselves as opposed to the tax-paying public at large"; that plaintiffs "would be obliged to support the public school system even if the relief desired by them were granted"; that plaintiffs' "tax burdens are not affected by the acts complained of"; and that plaintiffs "cannot base their action on a civil rights theory because * * * the children of plaintiffs do not attend defendants' schools and are not subjected to defendants' acts." Appellants point to the fact that the nuns employed to teach in the schools in question are paid less than ordinary lay-teachers; that no rent or only a small amount is paid for the use of the school buildings which are

owned by the Roman Catholic Church; and that defendants are paying the tuition of some children resident of the district who by choice are attending school in other districts because they object to certain specific facts and conditions in defendants' schools. On the basis of these and other facts appearing from the records, appellants insist that the acts and practices of defendants not only have not and will not increase plaintiffs' tax burdens, but will be beneficial to plaintiffs in their tax status; "that the system is costing plaintiffs less as taxpayers than a system without these elements would cost"; that "it is unnecessary and improper for this court to reach a decision on the merits of this case", because plaintiffs have no authority to raise the issues presented; and that plaintiffs are seeking to enforce a "public right" which could only be enforced by the prosecuting attorney of the county or the attorney general of the state. Appellants' theory is that "if the acts complained of have no pecuniary effect whatever on tax burdens, or serve to make taxes lower than taxes would be in the absence of the acts complained of, the taxpayers cannot be heard to complain, because there is no causal connection between their complaints and their pocketbooks."

It is difficult to understand this contention in view of the fact that it has been stipulated and agreed between the parties: "20. That a justiciable controversy existed at the time of the filing of the suit herein, and now exists between plaintiffs and defendants in this towit." The averments and claims of plaintiffs, as denied by defendants, are then reviewed without any mention of plaintiffs' alleged lack of pecuniary interest or right to maintain the action. Further, in argument in appellants' original brief, appellants refer to a particular matter which was in issue in the case and then state that it "is the only matter about which a justiciable controversy exists and which is properly before the court for decision."

There is no merit in appellants' contention that plaintiffs may not maintain the action. We are not here concerned with the amount of any lawful expenditures for public school purposes, but only with the alleged unlawful and unconstitutional expenditures of public school funds for the maintenance and operation of alleged parochial schools contrary to the provisions of Section 8, Article IX of the Constitution of Missouri 1945 and other constitutional provisions. In determining a taxpayer's pecuniary injury resulting from the unlawful expenditure of public funds, we may not weigh lawful expenditures against unlawful expenditures, because no legal injury results from the lawful expenditures of public funds.

It is admitted that plaintiffs and each of them are residents and taxpayers of the state of Missouri and of their respective school districts. As such taxpayers, there can be no question as to their right and legal capacity to bring and maintain this action for them-

selves and on behalf of all others similarly situated to enjoin the unlawful expenditure of public funds. In such case proof of illegal and unconstitutional expenditure of such public funds is sufficient to show private pecuniary injury, because of the taxpayers equitable ownership of such funds and his liability to replenish any deficiency resulting from the misappropriation. Castilo v. State Highway Comm., 312 Mo. 244, 262, 279 S.W. 673; Harris v. Langford, 277 Mo. 527, 211 S.W. 19, 21; 52 Am. Jur. p. 3, Taxpayers' Actions, Sec. 3. If funds raised by taxation and expressly set apart by law for the establishment and maintenance of free public schools are unlawfully expended upon other and different schools, to wit, parochial and sectarian schools, contrary to the constitutional mandate, as specifically pleaded by plaintiffs, the necessary conclusion is that the burden of taxation on the resident tax-paying citizens will be increased. The free public schools required by law to be established and maintained will have to be established and maintained out of additional funds raised to replace the funds unlawfully diverted.

Further, it has been held that in such a case as this, "where public interests are involved and public funds are about to be dissipated for an illegal purpose," a taxpayer may maintain the action without being required to show at the trial the extent of the damage which he may sustain if the injunction be refused. Civic League of St. Louis v. St. Louis, (Mo. Sup.) 223 S. W. 891, 893; Hawkins v. St. Joseph, (Mo. Sup.) 281 S.W. 420, 421. And see Clark v. Crown Drug Co., 348 Mo. 91, 152 S.W. (2d) 145, 147.

In the printed argument in the original brief it is contended that "the decree * * * determines the obligations of the teachers before the law, and they should be made parties to the controversy in order that their rights may be determined and respected." Appellants insist that the failure to join an indispensable party is ground for dismissal; and that for this reason the judgment should not be permitted to stand. Under points and authorities, appellants say that since the nun teachers have not been joined, this court should not decide a case that will leave the controversy unsolved. No specific error of the trial court with reference to the matter is even mentioned. In the reply brief appellants say that "the trial court erred in finding that the teachers are not indispensable parties to this action and the trial court erred in not limiting its decree to such matters as might be adjudicated in the absence of the teachers as parties."

In the judgment entered in this cause the trial court made no finding that the teachers were not indispensable parties. The matter of the teachers as indispensable parties is not mentioned in the judgment, but in defendants' motion for a new trial the defendants complained of certain findings and orders of the trial court on the ground that the nun-teachers were not parties to the record. There

was no complaint in the motion that the trial court should have limited its decree to such matters as might be adjudicated in the absence of the teachers as parties. That matter was not presented to and ruled upon by the trial court and it is not for decision here. Sec. 512.160 RSMo 1949. In the court below the defendants (before filing answers) moved to dismiss plaintiffs' petition and one of the grounds assigned was "because parties necessary to the complete determination of the cause have not been joined." The alleged necessary parties were not named or described. The motion to dismiss was heard and overruled and neither the motion to dismiss, nor any action of the trial court with reference thereto, was mentioned in defendants' motion for a new trial. In such situation, the trial court's ruling on the motion to dismiss has not been preserved for review. Sup. Ct. Rule 3.23. In the answers subsequently filed by defendants no reference was made to any alleged indispensable parties and the matter was not further considered in the course of the trial. Defendants' motion to dismiss and for judgment at the close of all the evidence mentions the teachers as indispensable parties, but the court's ruling on the motion is not mentioned in the motion for a new trial. The matter is not before us for review. Barnard v. Keathley, 230 Mo. 209, 222, 130 S.W. 306. And see Secs. 507.050 and 509.340 RSMo 1949; Sup. Ct. Rule 3.06. We are of the opinion, however, that in view of the issues raised and decided there is no merit in appellants' contention. Mickelberry's Food Products Co. v. Haeussermann (Mo. Sup.), 247 S.W. (2d) 731, 740.

▮ The trial court construed Article I, Sections 5-7, and Article IX, Section 8 of the Constitution of Missouri 1945' to mean "that the State of Missouri has a fixed and definite policy to maintain free public schools separate and apart from all religious, church or sectarian activities and influences to the end that absolute freedom of choice of religion and freedom of worship shall be unaffected by any religious influences, activity, proselyting example and indoctrination through and intrusion into the free public school system of the State of Missouri. * * * That it is the unqualified policy of the State of Missouri that no public funds or properties, either directly or indirectly, be used to support or sustain any school affected by religious influences or teachings or by any sectarian ▮ or religious beliefs or conducted in such a manner as to influence or predispose a school child towards the acceptance of any particular religion or religious beliefs; * * *."

The Court held: "That the policy of the Roman Catholic Church to intermingle education and religious teachings in order to secure and strengthen the faith of its adherents and to secure indoctrination of children in its religious principles is in direct conflict with the policy of the State of Missouri in the fields of public education and of the free public schools; that the educational policies of the State

of Missouri, as expressed in its constitution and laws, and the educational policies of the Roman Catholic Church cannot be effectuated in any single school at the same time; that said policies are utterly inconsistent and mutually exclusive. * * *."

As stated, the Court found that the schools at Gildehaus and Krakow were not free public schools; that certain specific features of the maintenance and operation of these schools destroyed the free public character of said schools and rendered them ineligible for support from public funds or by public authority. The court enjoined and restrained defendants from using or paying any public monies for the maintenance and support of either of these schools, as presently conducted and maintained.

Appellants, in their reply brief, contend that "the trial court erred in finding that the schools in defendant district (Gildehaus and Krakow in District 8) are not free public schools and not entitled to tax money." It is further contended that the trial court "erred in enjoining the operation of defendant schools in the absence of a finding by the trial court that the children in defendants' schools are actually influenced or coerced in the classroom." The last matter mentioned was not presented or ruled upon by the trial court. It was not pleaded as a defense or raised in the trial of the cause and the motion for a new trial did not complain of the judgment on such ground. The matter may not be considered on appeal. Sec. 512.160(1), supra.

The assignment that the trial court erred in finding that the schools, as operated by certain of the defendants at Gildehaus and Krakow, "were not free public schools and not entitled to tax money", in effect presents the question of the sufficiency of the evidence to support the judgment in the respect mentioned. See Sec. 510.310 RSMo 1949. In ruling this assignment in this case, where plaintiffs (respondents) have sought relief by way of a declaratory judgment and by injunction, we must review the evidence on the issue mentioned, determine its weight and value and reach our own conclusions as to facts and law. We need not defer to the finding of facts by the trial court because no witnesses appeared personally before him and the cause was tried upon an agreed statement of facts and evidence from which ultimate conclusions of fact are to be made.

In determining the issue presented we are not limited to a consideration of any particular fact separate and apart from all other facts and circumstances shown by the whole record. We must consider the total effect of all of the facts and circumstances in evidence in determining whether the schools in question are in fact free public schools. In this connection we need only refer to the agreed facts concerning the location of the schools in question on church property, their ownership by the Catholic Church, the presence in the classrooms of nun-teachers while dressed in distinctive religious

garb and wearing distinctive religious emblems, the conducting of religious services by the nuns in their living quarters in the one school building in which some of them reside, the fact that the nun-teachers daily conduct for the Catholic students and others religious services at the churches located on the same property or on property adjoining the school grounds, the religious instruction of Catholic school children on Saturday mornings at the adjoining churches by the nuns who teach in the schools, the sending of children who do not wish to attend the schools in question and who object to certain practices in defendants' schools to public schools in Washington ▮▮▮▮ and Union, the paying of their tuition by the defendant districts and the use of the same school buses with the same drivers under the same management for transportation of children to school on school days and for religious training on Saturdays (the buses being owned and the insurance paid by the members of the Church parish at Gildehaus, with maintenance and repairs paid by District 8, while other costs are apportioned between the school authorities and the church in accordance with use.) Other agreed facts, which must be considered included the fact that under the canon laws of the Roman Catholic Church "Catholic children are to be educated in schools where not only nothing contrary to Catholic faith and morals is taught, but rather in schools where religious and moral training occupy first place"; that "Catholic children shall not attend non-Catholic, indifferent schools that are mixed, that is to say, schools open to Catholic and non-Catholic alike", without permission of church authorities; that only children of Roman Catholic families are sent from Rock Hill to attend school in District 8, such children being sent by agreement of their parents and defendants, while all non-Catholic children in the Rock Hill district are "sent by defendants to public schools in adjoining districts on the west of Rock Hill" and their tuition and transportation paid; that the defendant school directors have not been advised of any change in the attitude of the Catholic authorities charged with the supervision of Catholic parochial schools towards the schools in question, since the school districts began the appropriation of public tax money for the support of these schools in 1931; that nuns from the same Catholic orders have continued to teach in the schools at Krakow and Gildehaus, without any intermingling of lay teachers; that the defendant school board has approved, without exception, such nun-teachers as have been sent by the Mothers Superior of the respective teaching orders to teach in the respective schools; and that the practice of adjourning of school for religious holidays in addition to the legal holidays recognized by the State Board of Education has been followed and also the practice of excusing students from classes for the purpose of partaking in special religious ceremonies such as weddings and funerals.

From these and other facts shown by this record, we think the conclusion is inescapable that these schools, as maintained and operated by defendant District 8 and its officers at Gildehaus and Krakow, were in fact "controlled in the main by members of recognized orders of the Roman Catholic Church and by officials thereof"; that said schools to a great degree were "managed and administered in a manner to promote the interests and policies of the Roman Catholic Church and of adherents of the Roman Catholic faith"; and that said schools were not in fact free public schools and were not entitled to be supported by public school money or public funds. Harfst v. Hoegen, 349 Mo. 808, 163 S.W. (2d) 609.

The judgment is affirmed. All concur.

## On Motion for Rehearing, or in the Alternative to Transfer to Court en Banc.

PER CURIAM.—Appellants complain of the court's holding that there is no merit in their contention that the teachers are indispensable parties to a complete determination of plaintiffs' cause of action. Appellants admit that their motion to dismiss did not specifically point to the teachers as the alleged indispensable parties. Appellants also admit that "there was no specific mention of the point in the judgment," but they claim that the contention was by implication ruled against them in the judgment; and that "there is no reason to invoke the harsh rule of waiver in this case." Appellants further object to the court's action in stating that the issue is "not here for decision" and then ruling "the point on the merits against the contention of appellants without giving any reasons for its ruling except for the citation of a case," which case appellants seek to distinguish. Since the issue was ruled in the opinion, perhaps the matter should have been further discussed.

The present action was instituted by the plaintiffs, as taxpayers, to prevent certain unlawful practices in the management and control of the particular schools and to enjoin the alleged unlawful expenditure of public funds by the named defendants. Plaintiffs' position was that the schools in question were in fact being managed, administered and controlled in the interest of a particular religious denomination contrary to certain constitutional provisions, and that, as a result thereof, the defendants were unlawfully expending public funds in support thereof. In their motion for a rehearing appellants concede that "the pole star of the inquiry here is simply this: Are the schools here 'free public schools?'" There can be no doubt that such is the chief issue. In the action the plaintiffs sought no relief against the teachers. The teachers were not necessary parties to a determination of the issues between the parties-plaintiffs and defendants as to whether the schools in question were free public schools, or whether such schools were being managed, controlled and administered so as

to promote the interests of a particular religious denomination, or as to whether the expenditure of the tax funds by defendants was lawful or unlawful. The controversy existing between plaintiffs and defendants was subject to a full and complete determination without the necessary presence or intervention of any other interested parties. The matter of the existence of any lawful or unlawful contractual relationships between the defendant districts and the teachers in the respective schools was not decisive or material to the issues on trial between the parties to this action, nor could the validity or invalidity of any such contracts constitute a defense to the plaintiffs' action.

The action was instituted on January 12, 1951. It was tried and submitted March 25, 1952. The decree in question was entered on April 21, 1952 and the injunctive and restraining provisions of the decree became effective on June 15, 1952. The teachers' contracts were, of course, subject to cancellation on notice on or before April 15th of 1951 and 1952, as provided by Section 163.090. RSMo 1949, but whether cancelled or not, the existence or not of such contract could constitute no defense to plaintiffs' action.

If defendants had wanted the teachers brought in as parties to the action they should have presented the matter to the trial court in the manner provided by statute. See Sections 507.050, 509.340 and Supreme Court Rule 3.06. If the teachers wanted to intervene as parties to the action they should have made their application to the trial court.

Appellants have not pointed out wherein the said teachers were indispensable parties to the disposition of any issue between plaintiffs and defendants. They say that no notice has been given the teachers; that their contracts are still in effect; and that this court has affirmed the trial court's judgment without the presence of the teachers as parties. Appellants also say that the determination of the appeal "leaves the teachers discharged without due process of law and also leaves the whole controversy unsolved as to them." However, there is no contention that, in view of the judgment as entered, any issue is unsolved as between the parties to the action. On this record we must and do hold that the nun teachers in defendant schools were not necessary parties to plaintiffs' action and, in no sense, were they indispensable parties without whose presence there could not be a complete determination of the controversy set forth in the pleadings as existing between plaintiffs and defendants. The matter of the validity of contracts between the districts and the teachers has not been presented to or determined by this court. Neither the contracts nor the teachers were before this court.

Appellants further insist that they raised in the trial court a contention that "the scope of the inquiry in the trial court should have been limited to facts, evidence and events that took place in the classrooms"; and that the trial court's orders should have been limited to matters transpiring in the classrooms. They say that they

raised the question in the motion to strike ██ certain portions of the agreed statement of facts; and that in their motion for a new trial they specifically complained of the admission in evidence of the facts in the agreed statement of facts which they sought to have stricken therefrom. As stated in the opinion, appellants have presented no valid assignment in this court calling for a review of the trial court's action in either overruling appellants' motion to strike said evidence or in admitting the said facts in evidence over objection. The final assignment presented in this court essentially concerns only the sufficiency of the evidence in the record to support the judgment with respect to whether the schools in defendant districts were free public schools. That issue has been ruled in the opinion.

Other contentions in the motion have been considered and determined adversely to appellants. The motion for rehearing or to transfer to court en banc is overruled.