Dear Representative Calloway:
This official opinion is issued in response to your request for a ruling on the following questions:
 "1. Do federal funds paid directly to the Board of Education of the City of St. Louis under the provisions of the Emergency School Aid Act (ESAA) constitute public funds which are subject to the spending proscriptions contained in Missouri law?
 "2. If so, does Missouri law prohibit the use of public school personnel paid with ESAA funds to provide teaching services to children attending sectarian schools on the premises of the sectarian schools during the regular school day?"
The facts surrounding this request are as follows:
During the 1976-77 and 1977-78 school years, the St. Louis School District received federal funds under the provisions of the Emergency School Aid Act, (ESAA), 20 U.S.C. § 1601, et seq., for the purpose of reducing minority group isolation in the schools. Such funds have been utilized for the support of the district's Magnet School Program. The Magnet School Program involves the establishment of a number of specialized elementary and secondary schools in the district, each having a particular area of emphasis (i.e. Math/Science, Performing Arts, Basic Education, etc.) and each having an integrated student population. ESAA funds have again been awarded to the district for the 1978-79 school year.
Unlike funds paid under the provisions of Title I of the Elementary and Secondary Education Act of 1965, ESAA funds are not paid to the state and are not deposited in the state treasury. Rather, the U.S. Department of Health, Education and Welfare (HEW) sends such funds directly to the local education agency (the school district, in this case) and they are deposited in and flow through the accounts at the local school district.
ESAA requires a local education agency that receives funds to provide for the participation of nonpublic school students and staff on an "equitable basis." 20 U.S.C. § 1609(a)(12). In the past, the St. Louis Public School System has met the nonpublic participation requirement by establishing magnet school centers on the premises of schools operated by the Archdioces of St. Louis, an arm of the Catholic Church, during the regular school day. The district has provided program coordinators, teachers, and teacher aides to the nonpublic magnet centers on a part-time basis. Such individuals were district employees and spent the remainder of their time during the school day in public school settings. In-service sessions for magnet school teachers employed by the Archdioces have also been provided and non-expendable equipment and supplies have been loaned to the Archdioces for use in the centers. Also, transportation is provided for field trips.
The requirement for equitable nonpublic school participation may be waived where the local education agency is prohibited by law from providing for the participation of nonpublic school children and staff. If a waiver, or "bypass," is instituted, HEW is obligated to provide other arrangements for nonpublic participation. 20 U.S.C. § 1611(c)(1); 45 CFR § 185.42(i). You have indicated that the St. Louis School District plans to continue its nonpublic school programming unless it is advised in this opinion that such continuation would be unlawful.
Any discussion of the questions you have raised must begin with a careful examination of Wheeler v. Barrera, 417 U.S. 402
(1974) and Mallory v. Barrera, 544 S.W.2d 556 (Mo.Banc 1976). These cases involved federal funds granted to states under the Elementary and Secondary Education Act, 20 U.S.C. § 241a, et seq.
(hereinafter referred to as Title I) for the purpose of aiding local school districts in meeting the special needs of educationally deprived and economically disadvantaged children. Title I, like ESAA, also provides for nonpublic school participation in these federally assisted programs.
In Wheeler, the United States Supreme Court ruled that Title I evinced a congressional purpose to accommodate rather than preempt state law and that therefore, the question of whether the federal funds were subject to Missouri's constitutional spending proscriptions was to be determined under state law. At the time the Supreme Court heard the case, this question had not been definitively resolved at the state level.
In Mallory, the Missouri Supreme Court did provide a resolution, stating as follows, 544 S.W.2d at 561:
 "Title I funds are obviously `public' funds. Speaking of these funds as `federal' to distinguish them from `state' funds does not alter their character as public funds. Nor does the fact that this is `federal aid' make it any the less public funds.
 "We are inclined to the view, and hold, (1) that when these funds are paid to the state, as required by the Act (20 U.S.C. § 241g(a)(1)), they must be deposited in the state treasury; (2) that when so deposited, these funds are held by the state in trust for the uses and purposes specified in the Title I program approved by the Federal Commissioner, and may be appropriated and used by the state for such of those purposes as are not proscribed by the laws of this state; (3) that that part of these funds in a Title I project which has been approved by the Federal Commissioner for use in a free public school is `money donated to [a] state fund for public school purposes' within the meaning of the laws of Missouri; (4) that the use of any part of Title I funds by the state to provide teaching services to elementary and secondary school children on the premises of parochial schools would constitute the use of public funds (a) in aid of a denomination of religion proscribed by Art. I, § 7; and (b) to help to support or sustain a school controlled by a sectarian denomination proscribed by Mo. Const. Art. IX, § 8, Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 613-614[8, 10] (Mo.banc 1942); Berghorn v. Reorganized School District No. 8, 364 Mo. 121, 260 S.W.2d 573, 582-583 (1953); Paster v. Tussey, 512 S.W.2d 97 (Mo.banc 1974)."
The Barrera cases thus made it clear that state law was not to be preempted by Title I, that federal funds are considered public funds when they come into the state, and that the use of those funds to provide on-premises instruction to parochial school children was violative of the Missouri Constitution.
The facts presented in your opinion request present at least two distinctions from the Barrera cases. First, the federal funds in question flow from the ESAA rather than Title I. Secondly, the federal grants flow directly to local school districts and do not pass through the state treasury. We must examine these distinctions in order to determine if they mandate a result different from that reached in the Barrera cases.
Before proceeding to that task, however, one preliminary issue must be considered. In Wheeler the United States Supreme Court held squarely that state law was to govern the propriety or constitutionality of expenditures under Title I for nonpublic school participation. In so ruling, the Court considered the legislative history of Title I and concluded that Congress intended that state law be accommodated rather than preempted. It is our opinion that the same conclusion is appropriate in connection with the ESAA, at least insofar as the nonpublic school issue is concerned. As mentioned earlier, the ESAA provides, 20 U.S.C. § 1611(c)(1):
 "If a local educational agency in a State is prohibited by law from providing for the participation of children and staff enrolled or employed in private nonprofit elementary and secondary schools as required by paragraph (12) of section 1609 (a) of this title, the Assistant Secretary may waive such requirement with respect to local educational agencies in such State and, upon the approval of an application from a local educational agency within such State, shall arrange for the provision of services to such children enrolled in, or teachers or other educational staff of, any nonprofit private elementary or secondary school located within the school district of such agency if the participation of such children and staff would assist in achieving the purpose of this chapter stated in section 1601(b) of this title or in the case of an application under section 1607(c) of this title would assist in meeting the needs described in that subsection. . . ."
By expressly allowing for the Secretary to "bypass" the local school officials in the provision of services, Congress has indicated its intention to accommodate, rather than to preempt state law. We further note that the regulations promulgated under the ESAA require that local educational agencies, when applying for a "bypass," shall furnish the Assistant Secretary with copies of the "laws, rules, court decisions, or opinions of State legal officers as are necessary to set out the basis for such prohibition," 45 CFR § 185.42(i). It is clear, therefore, that state law should be used to determine whether or not a local school district may provide on-premises instruction to private school pupils in meeting the requirements of the ESAA.
We turn now to the question of whether the Mallory case controls in the situation here presented. Title I and the ESAA differ in several respects. The purpose of the former is to provide special educational services to educationally deprived children living in low-income areas, and the law is largely silent on the precise programs or projects which local school officials may use to achieve this purpose. Title I grants are awarded by HEW to state educational agencies, which in turn distribute the funds to local school districts who make application in accordance with Title I requirements. Typically, Title I money is used to provide teachers, equipment, and supplies for remedial and enrichment programs for disadvantaged students.
The purpose of the ESAA is to eliminate or prevent minority group isolation in the schools and to aid school children in overcoming the educational disadvantages of such isolation. Grants are made to local school districts upon application to the Assistant Secretary of HEW, and the state education agency is given only an opportunity to offer recommendations to and comments on the application. The activities authorized by the act include special remedial services for children involved in a desegregation plan, teacher training, counseling, community activities, magnet schools, and other innovative interracial programs. In the present case, the federal assistance received by the St. Louis School District is used for its magnet school program, which involves teaching and other services in schools controlling racial enrollments to promote integrated education. We note that the ESAA's requirement of nonpublic school participation does not extend to any private schools which discriminate on the basis of race or which serve as an alternative to children seeking to avoid desegregation in the public schools.
Both Title I and the ESAA require that the funded programs be operated and administered by the local school district; all federal funds and property derived therefrom must remain under the control of the local school district (20 U.S.C. § 241e(a)(3); 20 U.S.C. § 1609(a)(5)).
In noting the differences and similarities between Title I and the ESAA, we perceive no reason to believe that ESAA funds are to be treated any differently than Title I funds once those funds come into the state or its political subdivisions. In other words, we believe that the Missouri Supreme Court would not change the method of analysis used in Mallory v. Barrera had it been confronted with ESAA funds rather than Title I funds.
Thus, we reach the pivotal issue of whether federal funds paid directly to a local board of education pursuant to the ESAA are public funds. As mentioned above, the Missouri Supreme Court ruled in Mallory that under the facts of that case, federal grants were public funds when they were received and deposited in the state
treasury. The court also stated, 544 S.W.2d at 561:
 "Title I funds are obviously `public' funds. Speaking of these funds as `federal' to distinguish them from `state' funds does not alter their character as public funds. Nor does the fact that this is `federal aid' make it any the less public funds."
Section 165.011, RSMo Supp. 1977, requires that all moneys received by a school district are to be placed to the credit of one of the funds established by law for the accounting of all school money. There can be no dispute that these are public funds or accounts.
Article I, Section 7 of the Missouri Constitution provides:
 "That no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof, as such; and that no preference shall be given to nor any discrimination made against any church, sect or creed of religion, or any form of religious faith or worship."
Article IX, Section 8 of the Missouri Constitution provides:
 "Neither the general assembly, nor any county, city, town, township, school district or other municipal corporation, shall ever make an appropriation or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose, or to help to support or sustain any private or public school, academy, seminary, college, university, or other institution of learning controlled by any religious creed, church or sectarian denomination whatever; nor shall any grant or donation of personal property or real estate ever be made by the state, or any county, city, town, or other municipal corporation, for any religious creed, church, or sectarian purpose whatever."
Insofar as Mallory v. Barrera held that federal funds are to be considered public funds, its holding appears to be equally applicable to federal funds deposited directly in the accounts of the school district. So long as the Missouri Supreme Court does not exempt federal funds from the spending prohibitions of the Missouri Constitution, we must conclude that federal money flowing through the funds of a public school district may not be used in aid of a denomination of religion (Article I, Section 7) or to help support or sustain a school controlled by a sectarian denomination (Article IX, Section 8).
Another traditional legal proposition prevents the conclusion that school district funds are somehow different from state funds. It has often been held, in other contexts, that funds held by a local school district are considered the property of the state and not the private property of the school district, State ex rel.Gold v. Dunne, 421 S.W.2d 268 (Mo. 1967); School District of Mexico,Missouri, No. 59 v. Maple Grove School District, No. 56, of AudrainCounty, 359 S.W.2d 743 (Mo.Banc 1962); cf. Blount v. Ladue SchoolDistrict, 321 F. Supp. 1245 (E.D.Mo. 1970). Thus, if federal funds paid into the state treasury are considered public funds, so too would federal funds be considered public funds when paid into school district accounts.
Given this conclusion, the answer to your second question is also provided by Mallory v. Barrera, which ruled that the use of public funds to provide teaching services to elementary and secondary school children on the premises of parochial schools would violate the above-quoted constitutional provisions. Mallory v.Barrera, supra at 561, citing Harfst v. Hoegen, 163 S.W.2d 609,613-614 (Mo.Banc 1942); Berghorn v. Reorganized School Dist. No.8, 260 S.W.2d 573, 582-583 (Mo. 1953); Paster v. Tussey,512 S.W.2d 97 (Mo.Banc 1974). See also, Special District for Educationand Training of Handicapped Children of St. Louis County v. Wheeler,408 S.W.2d 60 (Mo.Banc 1966). The teachers in Mallory were also public school personnel paid with federal funds.
CONCLUSION
Based on the foregoing, it is our opinion that:
(1) Federal funds paid directly to the Board of Education of the City of St. Louis under the provisions of the Emergency School Aid Act (ESAA) constitute public funds which are subject to the spending proscriptions of the Missouri Constitution.
(2) The Missouri Constitution prohibits the use of public school personnel paid with ESAA funds to provide teaching services to children attending sectarian schools on the premises of the sectarian schools during the regular school day.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Sheila K. Hyatt.
Very truly yours,
 JOHN ASHCROFT Attorney General