280 So.2d 547

**OPINION OF THE JUSTICES.**

**No. 209.**

Supreme Court of Alabama.

July 10, 1973.

The House of Representatives of Alabama
State Capitol
Montgomery, Alabama

Dear Sirs and Madam:

We acknowledge receipt of your communication of May 1, 1973, which is as follows:

"The Honorable Howell T. Heflin
Chief Justice
Supreme Court of the State of Alabama
Montgomery, Alabama

"Dear Mr. Chief Justice:

"Attached hereto is copy of House Bill 247 introduced this date in the House of Representatives.

"Also attached hereto is copy of House Resolution No. 29 adopted this

date by the House of Representatives requesting your opinion.

"We would appreciate your opinion at the earliest possible time."

"HR 29

"Requesting an advisory opinion of the Justices of the Supreme Court relative to H.B. 247.

"BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the honorable Chief Justice and Associate Justices of the Supreme Court, or a majority of them, to give this body their written opinions on the following important constitutional questions which have arisen concerning the pending bill, H.B. 247.

"1. If enacted would this bill, which provides tuition grants to resident students attending private colleges in Alabama violate Article 93 of the Constitution of Alabama?

"2. If enacted, would this bill violate Article 263 of the Constitution of Alabama in that some of the private colleges are sectarian or denominational schools?

"RESOLVED FURTHER that the Clerk of the House is hereby directed to send nine true copies of the pending bill, H.B. 247, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court forthwith upon adoption of this Resolution."

"H.B. 247

"SYNOPSIS: To provide tuition grants to resident students attending private accredited colleges or universities in Alabama.

"A BILL TO BE ENTITLED
AN ACT

"To provide tuition grants to resident students of the State of Alabama who are attending private accredited colleges or universities in Alabama.

"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

"*Section 1.* The Legislature declares that there exists within the State of Alabama a number of accredited independent colleges and universities whose facilities could be used effectively in the public interest by the grant of financial assistance to citizens of this State who choose to attend such colleges and to pay a portion of the tuition charges at such college, thereby reducing the costs to the taxpayers of Alabama below the cost of providing similar instruction to such students at institutions of higher learning within the State Higher Education System. This Act, therefore, is adopted as a means of providing higher education opportunities to citizens of this State in utilizing the educational facilities and resources of private colleges and universities in this State more effectively.

"*Section 2.* Definitions. The term "eligible student" as employed in this Act is deemed to mean a person

"(a) who is a resident of Alabama at least 30 days prior to the date of requesting admission to a covered educational institution.

"(b) who attends, or who has been admitted to such covered educational institution and plans to attend such institution, for a full academic year, carrying a minimum academic course of study sufficient on successful completion to enable the student to be promoted to the next class at said institution at the conclusion of his academic year.

"The term 'full academic year' shall mean at least two semesters, if the institution is on the semester system; two trimesters, if the institution is on a trimester system; and three quarters if the institution is on the quarter system.

"The term 'covered institution' as employed in this Act shall mean any educa-

tional institution of higher learning which is an accredited institution as hereinafter defined located in Alabama which is not a branch of the Higher Education System of the State of Alabama or a part of the State Junior College Program for the State of Alabama.

"The term 'undergraduate student' as employed in this Act shall mean a student in any covered institution who is not doing work in a graduate school of such institution.

"The term 'accredited institution' as employed in this Act shall mean an institution of higher learning located in Alabama which is operated privately or publicly, and is

"(a) accredited by the Southern Association of Colleges and Schools based on their requirements as of December, 1970, or

"(b) one which has been certified by the Southern Association of Colleges and Schools based on their requirements as of December, 1970, as (1) a candidate for accreditation, or (2) as a school giving satisfactory assurance that it has potential for accreditation and is making progress which if continued will result in its achieving accreditation by such an agency in a reasonable time, or

" (c) which has received letters from at least three Alabama institutions accredited by the Southern Association of Colleges and Schools based on their requirements as of December, 1970, stating that its credits are and have been accepted as if earned in the institutions so accredited.

"*Section 3.* There is hereby granted to each eligible student attending a covered institution a sum for the first full year after the effective date of this Act of Fifty per cent of the average pupil appropriation as defined herein.

"The term 'average pupil appropriation' as employed in this Act shall be determined as follows: The State Treasurer shall at the close of each fiscal year determine from examination of the operating budget of the institutions of higher learning within the State Higher Education System and from other relevant information available from other state audit, budget, or fiscal authorities, the average dollar amount of state funds expended per undergraduate student for educational purposes by such institutions, other than for capital outlay.

"*Section 4.* There is created an Alabama Student Assistance Agency herein referred to as the 'Agency', to administer this grant program. The membership of the Agency shall consist of six (6) persons to be appointed by the Governor, one from each congressional district in the State. The Executive Director of the Alabama Higher Education Commission shall be an ex officio member of the Agency, who shall not be entitled to vote.

"Each member of the Agency shall serve without compensation but shall be reimbursed for expenses necessarily incurred in the performance of his official duties.

"The Governor shall designate one (1) official member as chairman.

"The term of office shall be for four years. If a member's term is terminated for any reason before the expiration date, the Governor shall fill the vacancy by the appointment of a person who has the same representative status and qualifications. The appointee shall fill the unexpired term of his predecessor and until his successor is appointed and qualified. Members shall be eligible for reappointment.

"The Agency shall meet at least once each fiscal year and may meet at such other times as the chairman may designate. Four (4) members shall constitute a quorum. A special meeting may be called by any three (3) members. Notice of a special called meeting shall be in writing and mailed to each member at least five (5) days prior to the meeting and shall state the date, time and place and subject matter of the meeting.

"The Agency shall employ and fix the compensation of a professionally qualified person as the Director of the program, and such other employees as may be necessary to effect the purposes of the program.

"The Agency is authorized to make all necessary rules, regulations, determinations and guidelines consistent with this Act for the effective administration of the functions enumerated herein.

"The Agency shall prepare and supervise the issuance of all public information concerning the provisions of the Alabama Tuition Grant Program; prescribe the forms and regulate the submission of applications for assistance; conduct any interviews and conferences with applicants; obtain any evidence of students' scholastic records in secondary schools deemed necessary; and determine eligibility for and make annual renewals of grants.

"The Agency shall issue certificates entitling persons to the grants and shall forward copies to the appropriate institutions of higher education. Cancellations of any grants shall be handled in the same manner.

"*Section 5.* The grants provided for herein shall be applied for by each person wishing to receive same by making application to the Alabama Student Assistance Agency who shall administer the tuition grant program. The Agency shall not approve any grant until there has been received from an appropriate officer of the covered institution a certification that the student applying for said grant is an eligible student. Upon receipt of such certification, and after the Agency has determined the application to be in order and has further determined the student to be an eligible student within the meaning of this Act, the Agency shall remit said grant to the eligible student who in return will apply the same to his tuition at such covered institution. The Agency shall have the final authority to determine who is an eligible student.

"*Section 6.* In the event any eligible student fails to complete the full academic year or reduces his academic load below the minimum provided for eligibility, the unearned portion of the grant shall be refunded to the Agency. Such unearned portion shall be determined on the basis of the ratio of months completed, with an academic load equal to or above the minimum provided herein for eligibility, to the months in the total school year at such covered institution. It shall be responsibility of each covered institution to report the loss of eligibility of its students to the Agency.

"*Section 7.* Each covered institution and the Agency shall be subject to examination by the State Auditor for the sole purpose of determining whether such institution has properly certified students and reported such students who have become ineligible during the academic year to the Agency and whether or not the Agency has collected the unearned portion of the grant due to be refunded. However, nothing in this Act shall be construed to interfere with the authority of such institution to determine admissibility of students, nor shall anything in this Act be construed to limit the absolute control by each institution of its own curriculum, philosophy, purpose and administration.

"*Section 8.* In the event funds are insufficient to provide each eligible student with the basic grant set out herein, each eligible student shall receive a reduced but equal share of the funds that are available.

"*Section 9.* The Agency shall have authority to adopt such rules and regulations as it may deem appropriate for the purpose of carrying out this act, its intent and purpose.

"*Section 10.* The provisions of this Act shall be applicable to all eligible students as defined herein indiscriminately regardless of race, color, creed, sex or national origin.

"*Section 11.* This Act shall become effective upon its approval by the Governor

or upon its becoming law without his approval.

"*Section 12.* All laws and parts of laws in conflict within this Act are hereby repealed."

We believe that the substantial question upon which you desire our opinion is whether it is constitutional to give State aid, in the form of tuition grants, to students attending church related schools, even though we realize that H.B. 247, as written, does not so limit the availability of the tuition grants to students attending church related institutions. Our opinion is therefore limited to the question of whether there can be State aid in the form of tuition grants, to students attending church related schools.

Alabama, along with many other states, has constitutionally provided for keeping church and state separate. In the Declaration of Rights, Article 1, Section 3 of the Alabama Constitution, it is provided:

"That no religion shall be established by law; that no preference shall be given by law to any religious sect, society, denomination, or mode of worship; that no one shall be compelled by law to attend any place of worship; nor to pay any tithes, taxes, or other rate for building or repairing any place of worship, or for maintaining any minister or ministry; that no religious test shall be required as a qualification to any office or public trust under this state; and that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles."

Your request specifically calls our attention to Article 14, Section 263, of the Alabama Constitution, which provides:

"No money raised for the support of the public schools shall be appropriated to or used for the support of any sectarian or denominational school."

■ While there is no Alabama decision construing and interpreting these provisions of our Constitution as they relate to State aid to parochial schools, the majority view among courts construing provisions similar to those in our Constitution have decided that such State aid is violative of not only state constitutional provisions but also of the First Amendment to the Federal Constitution. [See Hartness v. Patterson, 255 S.C. 503, 179 S.E.2d 907 (1971); Almond v. Day, 197 Va. 419, 89 S.E.2d 851 (1955); Otken v. Lamkin, 56 Miss. 758 (1879); Synod of Dakota v. State, 2 S.D. 366, 50 N.W. 632 (1891); Opinion of the Justices, 357 Mass. 846, 259 N.E.2d 564 (1970); Swart v. South Burlington Town School District, 122 Vt. 177, 167 A.2d 514, cert. denied, Anderson v. Swart, 366 U.S. 925, 81 S.Ct. 1349, 6 L.Ed.2d 384 (1961); Berghorn v. Reorganized School District, 364 Mo. 121, 260 S.W.2d 573 (1953).]

We are also of the opinion that H.B. 247 is violative of the Federal Constitution, Amendment Fourteen thereto, insofar as it provides for state funds to be used, directly or indirectly, for payment of tuition grants to students attending sectarian schools.

■ The guaranty of the Establishment Clause of the First Amendment is protected against state infringement by the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939).

The First Amendment to the Federal Constitution provides that:

"Congress shall make no law respecting an establishment of religion . . .."

The "Establishment Clause" has been given a broad interpretation by the Supreme Court of the United States and the basic views of the Supreme Court as to the constitutional guarantee of freedom of religion appears from the statement made by the Court in Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, rehearing denied, 330 U.S. 855, 67 S.Ct. 962, 91 L.Ed. 1297 (1947), as follows:

". . . The First Amendment, as made applicable to the states by the

Fourteenth, Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 872, 87 L.Ed. 1292, commands that a state 'shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ..''

Traditionally, the overriding caveat in such questions involving the Religion Clauses, not only of the Federal Constitution, but also of state constitutions, has been that there ought to be a "wall of separation between church and state." See Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878); Everson v. Board of Education, supra; Note: Aid to Parochial Schools: A Re-examination, 14 Wm. & Mary L.Rev. 128 (1972).

In Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court of the United States, after analyzing and considering the cumulative criteria developed by that Court in deciding cases arising under the Establishment of Religion Clause of the First Amendment, laid down three tests which a law must pass in order to be constitutional. The Court said:

". . . First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, Board of Education v. Allen, 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L. Ed.2d 1060 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.'"

In a series of cases the United States Supreme Court has recently reexamined the issue of state aid to nonpublic schools. In Committee for Public Education and Religious Liberty v. Levitt, 342 F.Supp. 439 (S.D.N.Y.) (1972), 413 U.S. 472, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973), the Court held that a state statute which reimbursed church sponsored schools for certain expenses in providing services required by the state contravened the Estab-lishment Clause of the First Amendment. The Court said a New York statute which reimbursed low-income parents for children's tuition paid to parochial schools also violated the Establishment Clause. Committee for Public Education and Religious Liberty v. Nyquist, 350 F.Supp. 655 (S.D. N.Y.) (1972), 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

Similarly, the Court has declared unconstitutional a Pennsylvania statute providing for reimbursement of tuition payments to parents whose children attend nonpublic schools. Lemon v. Sloan, 340 F.Supp. 1356 (E.D.Pa.) (1972), 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973).

In applying the tests laid down by the Supreme Court of the United States, we are of the opinion that the cumulative impact of the relationship between the State and church related institutions which is provided for in H.B. 247, involves "an excessive entanglement" between the State and religion and would therefore be unconstitutional under the Religion Clauses of the First Amendment to the Federal Constitution, as well as its Alabama counterpart, Article 14, Section 263.

In view of the opinion we have expressed on the question of state aid to parochial schools, we think it would serve no useful purpose to give our opinion on the issue whether H.B. 247 also violates Article 4, Section 93, Constitution of Alabama, 1901.

Respectfully submitted,

HOWELL T. HEFLIN,
  Chief Justice

PELHAM J. MERRILL

ROBERT B. HARWOOD
HUGH MADDOX

DANIEL T. McCALL

RICHARD L. JONES
  Justices.