This is an appeal by the Alabama Education Association (AEA), a non-profit domestic corporation and professional association, and Mary Railey and Elizabeth Ann Wright, two Alabama citizens, taxpayers, *Page 1078 
and public school teachers, from a final judgment entered against them which dismissed AEA as a party plaintiff, which denied appellants' request for injunctive relief, and which declared Act No. 90, Acts of Alabama, Special Session 1978, the Alabama Student Grant Program, to be constitutional on its face. We affirm.
The important and determinative issues are:
(1) Does the Alabama Student Grant Program contravene the Establishment of Religion Clause of the First Amendment to the Constitution of the United States?, and
(2) Does the Alabama Student Grant Program violate the Constitution of Alabama of 1901?
On 2 August 1978, House Bill 146 was sent to Governor George C. Wallace for his signature of approval after receiving a majority of the votes in both the House and Senate; thereafter, Governor Wallace affixed his signature to House Bill 146 which thereupon became Act No. 90, Acts of Alabama, Special Session, 1978. Act No. 90 basically established a student assistance program in the state which provided state grants for eligible students who are bona fide residents of Alabama. Such grants would be paid to certain approved institutions of post secondary education in Alabama on behalf of such eligible students. The Act further designated the Alabama Commission on Higher Education (ACHE) as the administrator of the program and directed it to establish various procedures and regulations concerning the availability of grants, applications for grants, approval and award of grants, renewal of grants, and revocation of grants. Act No. 90 also prohibited the use of grants for sectarian purposes; prohibited the use of money raised for the support of public schools to support schools of a predominantly sectarian or denominational character; required the periodic auditing of approved institutions; and prescribed other regulatory functions. Act No. 90 was separately funded by a $3,000,000 line item contained in the General Education Appropriation Bill, Act No. 12, Acts of Alabama, Second Special Session 1978.
On 11 August 1978, this action seeking injunctive and declaratory relief was filed by the AEA, Mary Railey and Elizabeth Ann Wright. The plaintiffs/appellants assert in their complaint that Act No. 90 failed to receive the alleged requisite two-thirds vote of each house as they contend is mandated by Article IV, Section 73 of the Alabama Constitution of 1901, and that, regardless of Section 73's application, Act No. 90 is violative of both the federal and state constitutions in that it constitutes the establishment of, and gives preference to, certain religious denominations.
The hearing on preliminary injunctive relief was set down and heard by the trial court and thereafter the court denied, without opinion, plaintiffs'/appellants' motion for preliminary injunction. Motions for intervention were filed by students attending four (4) private, denominational, recipient institutions.[1] Intervention was allowed without objection by plaintiffs.
A final hearing on the case was held by the trial judge oretenus. At the hearing the parties stipulated that defendants/intervenors were full-time students in institutions of higher education in Alabama, that each such intervenor was enrolled in an institution which could, under the challenged Act, qualify as an "Approved Institution" under the Act, that none of the intervenors were enrolled in a course of study leading to an undergraduate degree in theology or divinity, and that none of the institutions attended by defendants/intervenors were more sectarian than Huntingdon College.[2]
The trial court rendered final judgment which dismissed AEA as a party plaintiff in the case on the basis that it lacked standing; found Huntingdon College and the *Page 1079 
other colleges covered by the stipulation were not predominantly or pervasively sectarian; found any secular functions at the colleges to be distinct and separable from religious activity; found Act No. 90 to be restricted and carefully limited to secular purposes; and declared Act No. 90 to be constitutional on its face. Plaintiffs/appellants timely perfected notice of appeal to this court on 15 September 1978.
The major, and most important, issue involved in this appeal is whether Act No. 90 violates the Establishment of Religion Clause of the First Amendment to the Constitution of the United States. We find it does not.
The plaintiffs/appellants rely heavily on an advisory opinion given by members of this court in 1973: Opinion of theJustices, 291 Ala. 301, 280 So.2d 547 (1973). That opinion concerned a bill similar in nature to Act No. 90. The opinion was restricted to the question of whether there can be state aid in the form of tuition grants to students attending church schools. The bill under consideration, and the subject of the opinion, was said to violate the First and Fourteenth Amendments to the Constitution of the United States. When that opinion was issued, that was the apparent trend of the federal cases; however, two cases since 1973, Roemer v. Maryland PublicWorks Board, 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179
(1976), and Smith v. Board of Governors of N.C., 429 F. Supp. 871, aff'd 434 U.S. 803, 98 S.Ct. 39, 54 L.Ed.2d 65 (1977), make it clear that a grant program such as is established by Act No. 90 does not violate either the Fourteenth or the First Amendment to the Constitution of the United States.
In Roemer, supra, the United States Supreme Court attempted to clear up the tests set up in Lemon v. Kurtzman, (Lemon I),403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), for determining the constitutionality of state or federal aid to sectarian colleges. That test is tripartite. It is summarized in Lemon I as follows:
 "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, finally, the statute must not foster `an excessive government entanglement with religion.'"
We find that Act No. 90 complies with each of the three requirements of the test.
First, Act No. 90 clearly has a secular purpose. Section 2 of Act No. 90 clearly states this purpose:
 "The legislature finds and declares that there is an apparent need to narrow the gap in student charges between public universities and colleges and independent institutions of higher education in Alabama in order to provide students with true economic and academic freedom of choice in selecting a college; and to help assure that independent colleges will continue to contribute to the overall quality and diversity of post-secondary education in Alabama.
 "This Act is intended to provide higher educational opportunities to bona fide residents of the State by utilizing the facilities and resources of independent colleges and universities of the State more effectively."
In Smith, supra, a three judge federal panel found that "scholarship grants and tuition credits to students are secular in purpose." 429 F. Supp. at 879. This case was summarily affirmed by the United States Supreme Court (434 U.S. at 803,98 S.Ct. 39, 54 L.Ed.2d 65 (1977)); therefore, it is clear Act No. 90 meets part 1 of the Lemon I test.
It is equally clear Act No. 90 meets the second criterion ofLemon I; the primary effect criterion. In Hunt v. McNair,413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973), the U.S. Supreme Court explained the primary effect criterion in the following terms:
 "* * * [That] aid normally may be thought to have a primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission or *Page 1080 
when it finds a specifically religious activity in an otherwise substantially secular setting." 413 U.S. at 743, 93 S.Ct. at 2874.
The Supreme Court elaborated on the pervasively secular concept in Roemer when it stated that:
 "A system of government that makes itself felt as pervasively as ours could hardly be expected never to cross paths with the church. In fact, our State and Federal Governments impose certain burdens upon, and impact certain benefits to, virtually all our activities, and religious activity is not an exception. The Court has enforced a scrupulous neutrality by the State, as among religions, and also as between religions and other activities, but a hermetic separation of the two is an impossibility it has never required. * *
 "And religious institutions need not be quarantined from public benefits that are neutrally available to all. * * *" 426 U.S. at 745, 96 S.Ct. at 2344.
In this case the trial court, after hearing all the evidence, expressly found that none of the colleges involved in this case were "pervasively sectarian." We find no reason to question its finding; furthermore, Act No. 90 is supported by the Roemer
decision because the grants under the Act are to all eligible students attending all eligible private institutions and not just to sectarian institutions. The Act provides very specific safeguards to insure that no state money is used for sectarian purposes. See, e.g., §§ 1, 7, Act No. 90, Acts of Alabama, Second Special Session 1978. We therefore find that it meets the second criterion of the Lemon I test.
The third aspect of the Lemon I test involves excessive entanglement of church and state. In Roemer, the Supreme Court stated its holdings regarding aid to secular schools "are better reconciled in terms of the character of the aided institutions." 426 U.S. at 766, 96 S.Ct. at 2354. The court indicated there is less chance of government entanglement in aid to colleges than to elementary and secondary schools. It indicated that in colleges the student constituency is not local, but diverse and widely dispersed, and college students are not as susceptible to influence; therefore, there is no great need for state officials to investigate the conduct of particular classes to determine whether a school is attempting to indoctrinate students under the guise of secular education. The court implied that in the college situation it is relatively easy to determine whether an activity is secular or sectarian; therefore, there is less need for state supervision. The court said the fact the statute required an annual appropriation did not constitute excessive state entanglement with religion.
In Smith, supra, the court upheld three grant programs of North Carolina. There the statute was similar to Act No. 90 in that the statute provided for students to apply for grants; the grants were paid to colleges to be applied to the students' bills; the funds could be used for secular purposes only; and the statute specifically excluded any student enrolled in a program for a religious vocation. Similarly, a federal court upheld a Tennessee student assistance program which was secular in purpose, where the aid was for the student's benefit rather than the institution's, and no one religion or institution was favored over another. Americans United for Separation of Churchand State v. Blanton, 433 F. Supp. 97 (1977); see also, Lendallv. Cook, 432 F. Supp. 971 (1977) (Arkansas student scholarship program which was secularly restricted was sustained.) Based on these cases we find Act No. 90 meets the third criterion of theLemon I test.
Because Act No. 90 meets all requirements of Lemon I, we find it does not violate the First Amendment as applied to the States by the Fourteenth Amendment to the United States Constitution.
 II
Plaintiffs'/appellants' second major contention is that Act No. 90 violates the Constitution of Alabama of 1901. We hold it does not. *Page 1081 
Again the plaintiffs/appellants rely on the previously cited 1973 advisory opinion. There it was opined "that the cumulative impact of the relationship between the State and church related institutions which is provided for in H.B. 247, involves `an excessive entanglement' between the State and religion and would therefore be unconstitutional under the Religion Clauses of the First Amendment to the Federal Constitution, as well as its Alabama counterpart, Article [I], Section [3]."[3] Opinion ofthe Justices, 291 Ala. at 306, 280 So.2d at 553. When that opinion was given, the federal cases appeared to be going in that direction. The opinion stated the Lemon I tests set down by the Supreme Court were being applied. 291 Ala. at 306,280 So.2d 547. However, Roemer and Smith indicate the federal cases are not taking this direction; therefore, we now hold the Alabama constitutional provisions concerning the establishment of religion are not more restrictive than the Federal Establishment of Religion Clause in the First Amendment to the United States Constitution. Consequently, following the federal guidelines in this area, Act No. 90 does not violate Article I, Section 3 of the Alabama Constitution of 1901, the Alabama counterpart of the Religion Clauses of the First Amendment to the United States Constitution.
It should also be noted that advisory opinions rendered by justices of this court are nonjudicial in nature, and binding upon no person, for the obvious reason that advisory opinions do not conclude or vindicate any right or remedy nor do they result in any judgment or decree. Such opinions are merely the opinions of the individual justices and not those of the court.In re Opinion of the Justices, 209 Ala. 593, 96 So. 487 (1923).
Plaintiffs/appellants further contend that Act No. 90 violates Article XIV, Section 263 and Article IV, Section 73 of the Alabama Constitution of 1901. We do not agree and hold to the contrary.
Article XIV, Section 263 provides that "No money raised for the support of the public schools shall be appropriated to or used for the support of any sectarian or denominational school." The Act does not violate this provision because (1) it does not appropriate money; and (2) the grants it provides for are not for the support of the individual schools but are for the benefit of individual students and the state educational system. The student assistance program is funded by an appropriation in Act No. 12, Acts of Alabama, Second Special Session 1978, for the maintenance of a student assistance program to be administered by ACHE. The purpose of the program is clearly stated in the Act to be for the benefit of the public and not for the individual colleges. Act No. 90, Section 2, Acts of Alabama, Second Special Session 1978. The Act also has special provisions to prevent any sectarian use of any grant money; therefore, all grants under the Act are entirely for secular purposes.
The argument that the Act violates Article IV, Section 73 is weak and must fail. Article IV, Section 73, states that a two-thirds vote is required for any appropriation to any charitable or educational institutions not completely under the control of the state. Plaintiffs/appellants contend the Act was not passed by a two-thirds vote. This is true, but irrelevant. A two-thirds vote was not required because the Act did not appropriate any money. The program structured by the Act was funded by a separate appropriation bill which did receive a two-thirds vote.
 III
Plaintiff/appellant, AEA raises as error its dismissal from the action for lack of standing. We need not decide whether AEA has standing to sue in this action because the standing of the other two plaintiffs/appellants *Page 1082 
was not questioned and the case was heard on its merits. In fact, from the record, it appears that AEA was not dismissed until the judge rendered his final judgment; therefore, AEA was able to argue the merits of the case before it was dismissed. Any possible error arising from dismissal of AEA is harmless.
For the above stated reasons we find the lower court correctly decided the merits of this case; therefore, its judgment is due to be, and is, affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
[1] Three (3) students at Birmingham-Southern College, three (3) students at Samford University, five (5) students at Spring Hill College, and four (4) students at Huntingdon College.
[2] The court at the hearing on motion for preliminary injunction heard evidence concerning Huntingdon College of Montgomery.
[3] We corrected an obvious unintentional error in the original opinion. The quotation reads "* * * as well as its Alabama counterpart, Article 14, Section 263." This was obviously an unintentional mistake since it is clear that the Alabama counterpart to the Religion Clause of the First Amendment to the United States Constitution is Article I, Section 3.